## MAGNOLIA PETROLEUM CO. *v.* HUNT.

No. 29.   Submitted October 20, 1943.—Decided December 20, 1943.

Messrs. *Cullen R. Liskow* and *Homer Hendricks* submitted for petitioner.

*Sullivan H. Hunt, pro se.*

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

The question for decision is whether, under the full faith and credit clause, Art. IV, § 1 of the Constitution of the United States, an award of compensation for personal injury under the Texas Workmen's Compensation Law, Title 130 of the Revised Civil Statutes of Texas, bars a further recovery of compensation for the same injury under the Louisiana Workmen's Compensation Law, Title 34, Chapter 15 of the Louisiana General Statutes.

Magnolia Petroleum Company, petitioner here, employed respondent in Louisiana as a laborer in connection with the drilling of oil wells. In the course of his employment respondent, a Louisiana resident, went from Louisiana to Texas, and while working there for petitioner on an oil well, he was injured by a falling drill stem. He sought and procured in Texas an award of compensation for his injury under its Workmen's Compensation Law,[1] and petitioner's insurer made payments of compen-

---

[1] An employer becomes subject to the Act by becoming a subscriber under it by giving notice to the Industrial Accident Board (Texas Rev. Civ. Stat., Title 130, Art. 8308, § 18 a) and providing insurance required by the Act (Art. 8308). If an employee of a subscriber sustains an injury in the course of his employment, he is entitled to compensation without regard to the fault of the employer (Art. 8306, § 3 b), unless he has given timely notice of his intention not to waive his rights of action at common law and under other statutes of Texas. In that event he may sue for the remedies which they afford (Art. 8306, § 3 a). Employees of non-subscribers are not entitled to workmen's compensation, but may sue to recover for injuries received in the course of their employment without being subject to certain common law defenses (Art. 8306, §§ 1, 4). When an employee is entitled to compensation, he has no other right of action against the employer for injuries (Art. 8306, § 3).

The statute specifies the amounts of compensation, including expenses, payable for various injuries (Art. 8306, §§ 6–18). It provides that awards are to be made in the first instance by the Industrial

sation as required by the statute and the award. The award became final in accordance with the terms of the Texas statute.[2]

Respondent then brought the present proceeding in the Louisiana District Court to recover compensation for his injury under the Louisiana Workmen's Compensation Law.[3] Petitioner filed exceptions to respondent's petition

Accident Board (Art. 8307). In order to obtain a review of an award, a party must within 20 days give notice that he will not abide by it and within 20 days after giving notice, must file suit in an appropriate court (Art. 8307, § 5). In such a suit the trial is de novo (*id.*). If no such notice is given, or no such suit is filed within the times prescribed, the award becomes final (*id.*).

[2] Respondent filed with the Texas Industrial Accident Board a claim for compensation for his injury under the Texas Workmen's Compensation Law, as is the usual method of instituting a proceeding before the Board. Without awaiting an award on respondent's claim petitioner's insurer paid respondent compensation for his injury at the statutory maximum rate for seventy-three weeks. A dispute as to the proper prognosis of respondent's injury, a request for advice made by respondent to the Board, and a suspension by the insurer of further compensation payments to respondent, on the ground that his total disability had terminated, all prompted the Board to set the case for a hearing on his pending claim. Respondent received notice of the hearing and was requested to furnish medical evidence of his continued disability. Upon his failure to do this, the Board entered on December 3, 1940, as the full compensation for his injury, an award of a lump sum for total disability for 75 weeks and of weekly payments for partial disability for a further period of 125 weeks, and directed that payments already made by the insurer be credited upon the award. Respondent was notified as to the appeal he was required to take if he was dissatisfied with the award. No appeal was taken, and the award became final. Tex. Rev. Civ. Stat., Art. 8307, § 5. Respondent has refused payments which have been tendered to him subsequent to the making of the Texas award. On December 18, 1940, he began the present suit in Louisiana.

[3] The statute is applicable to all employees in certain specified hazardous occupations (including the work performed by respondent), and to employees in other occupations by voluntary contract between

on the ground that the recovery sought was barred as res judicata by the Texas award which, by virtue of the constitutional command, was entitled in the Louisiana courts to full faith and credit. The District Court overruled the exceptions and gave judgment for the amount of the compensation fixed by the Louisiana statute, after deducting the amount of the Texas payments. The Louisiana Court of Appeal affirmed, 10 So. 2d 109, and the Supreme Court of Louisiana refused writs of certiorari and review for the reason that it found "no error of law in the judgment complained of." We granted certiorari, 319 U. S. 734, because of the importance of the constitutional question presented and to resolve an apparent conflict of the decision below with our decisions in *Chicago, R. I. & P. Ry. Co.* v. *Schendel,* 270 U. S. 611, and *Williams* v. *North Carolina,* 317 U. S. 287; cf. *Alaska Packers Assn.* v. *Industrial Accident Comm'n,* 294 U. S. 532; *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n,* 306 U. S. 493.

In Texas a compensation award against the employer's insurer (with exceptions not here applicable, cf. Revised

the employer and the employee. La. Gen. Stat., Title 34, Ch. 15, § 4391. Such employees as receive injuries in the course of their employment are entitled to compensation (§ 4392) in specified amounts (§ 4398), unless the contract of employment provides otherwise (§ 4393), whether the injury is or is not due to the fault of the employer (§ 4427). If the employee elects to be covered under the Act, but the employer elects not to be, then in suits by the employee to recover for injuries received in the course of his employment, certain common law defenses are abolished (§ 4394). The compensation award may be fixed by agreement of the parties (§ 4407), or may be obtained by suit in the district court (§ 4408), with right of appeal to the appropriate appellate courts (§ 4409). And as in the present case, the statute is deemed under some circumstances to be applicable to injuries received by the employee without the state. *Hargis* v. *McWilliams Co.,* 9 La. App. 108, 119 So. 88; *Selser* v. *Bragmans Bluff Lumber Co.,* 146 So. 690 (La. App.).

Civil Statutes, Art. 8306, § 5) is explicitly made by statute in lieu of any other recovery for injury to the employee, since Art. 8306, § 3 provides that employees subject to the Act "shall have no right of action against their employer or against any agent, servant or employé of said employer for damages for personal injuries . . . but such employés . . . shall look for compensation solely to the association [the insurer]." A compensation award which has become final "is entitled to the same faith and credit as a judgment of a court." See *Ocean Accident & Guarantee Corp.* v. *Pruitt,* 58 S. W. 2d 41, 44-45 (Tex. Comm. App.), holding that an award is res judicata, not only as to all matters litigated, but as to all matters which could have been litigated in the proceeding with respect to the right to compensation for the injury. To the same effect are *Traders & General Ins. Co.* v. *Baker,* 111 S. W. 2d 837, 839, 840 (Tex. Comm. App.); *Middlebrook* v. *Texas Indemnity Ins. Co.,* 112 S. W. 2d 311, 315 (Tex. Civ. App.); cf. *Federal Surety Co.* v. *Cook,* 119 Tex. 89, 24 S. W. 2d 394. The Texas Court of Civil Appeals formerly held that a Texas employee could recover compensation of his Texas employer for an injury in another state for which he had already recovered compensation in that state. *Texas Employers' Ins. Assn.* v. *Price,* 300 S. W. 667. But in declining to review the case, the Texas Supreme Court expressly pointed out that this ruling had not been challenged, and that it was leaving the question undecided, 300 S. W. 672. The right of a second recovery in such circumstances was promptly abolished by statute. Revised Civil Statutes, Art. 8306, § 19. And under this statute a compensation award may not be had in Texas if the employee has claimed and received compensation for his injury under the laws of another state. *Travelers Insurance Co.* v. *Cason,* 132 Tex. 393, 396, 124 S. W. 2d 321.

The Louisiana Court of Appeal recognized that Texas had jurisdiction to award compensation to respondent for the injury received while working for petitioner within the state, and that the award has the same force and effect in Texas as a judgment rendered by a court of competent jurisdiction in that state. But it thought that full faith and credit did not require the Louisiana courts to give effect to the judgment as res judicata because Louisiana, despite the command of the full faith and credit clause, was entitled to give effect to its own statute prescribing compensation for resident employees of a resident employer even though the injury occurred outside the state.

It does not appear, nor is it contended, that Louisiana more than Texas allows in its own courts a second recovery of compensation for a single injury. The contention is that since Louisiana is better satisfied with the measure of recovery allowed by its own laws, it may deny full faith and credit to the Texas award, which respondent has procured by his election to pursue his remedy in that state. In thus refusing, on the basis of state law and policy, to give effect to the Texas award as a final adjudication of respondent's claim for compensation for his injury suffered in Texas, the Louisiana court ignored the distinction, long recognized and applied by this Court, and recently emphasized in *Williams* v. *North Carolina, supra,* 294–296, between the faith and credit required to be given to judgments and that to which local common and statutory law is entitled under hte Constitution and laws of the United States.

In the case of local law, since each of the states of the Union has constitutional authority to make its own law with respect to persons and events within its borders, the full faith and credit clause does not ordinarily require it to substitute for its own law the conflicting law of another state, even though that law is of controlling force in the courts of that state with respect to the same persons and

events. *Pink* v. *A. A. A. Highway Express*, 314 U. S. 201, 209–211 and cases cited; *Klaxon Co.* v. *Stentor Co.*, 313 U. S. 487, 496–498. It was for this reason that we held that the state of the employer and employee is free to apply its own compensation law to the injury of the employee rather than the law of another state where the injury occurred. *Alaska Packers Assn.* v. *Industrial Accident Comm'n, supra,* 544–550. And for like reasons we held also that the state of the place of injury is free to apply its own law to the exclusion of the law of the state of the employer and employee. *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n, supra,* 502–505.

But it does not follow that the employee who has sought and recovered an award of compensation in either state may then have recourse to the laws and courts of the other to recover a second or additional award for the same injury. Where a court must make choice of one of two conflicting statutes of different states and apply it to a cause of action which has not been previously litigated, there can be no plea of res judicata. But when the employee who has recovered compensation for his injury in one state seeks a second recovery in another he may be met by the plea that full faith and credit requires that his demand, which has become res judicata in one state, must be recognized as such in every other.

The full faith and credit clause and the Act of Congress implementing it have, for most purposes, placed a judgment on a different footing from a statute of one state, judicial recognition of which is sought in another. Article IV, § 1, of the Constitution commands that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State," and provides that "Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof." And Congress has provided that judgments "shall have such

faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." Act of May 26, 1790, c. 11, 1 Stat. 122, as amended, 28 U. S. C. § 687.

From the beginning this Court has held that these provisions have made that which has been adjudicated in one state res judicata to the same extent in every other. *Hampton* v. *McConnell,* 3 Wheat. 234, 235; *Christmas* v. *Russell,* 5 Wall. 290; *Fauntleroy* v. *Lum,* 210 U. S. 230; *Kenney* v. *Supreme Lodge,* 252 U. S. 411; *Milwaukee County* v. *White Co.,* 296 U. S. 268; *Davis* v. *Davis,* 305 U. S. 32, 40; *Titus* v. *Wallick,* 306 U. S. 282, 291–292; *Williams* v. *North Carolina, supra.* Even though we assume for present purposes that the command of the Constitution and the statute is not all-embracing, and that there may be exceptional cases in which the judgment of one state may not override the laws and policy of another,[4] this Court is the final arbiter of the extent of the exceptions. *Alaska Packers Assn.* v. *Industrial Accident Comm'n, supra,* 547; *Titus* v. *Wallick, supra,* 291. And we pointed out in *Williams* v. *North Carolina, supra,* 294–295, that "the actual exceptions have been few and far between. . . ."

We are aware of no such exception in the case of a money judgment rendered in a civil suit. Nor are we aware of any considerations of local policy or law which could rightly be deemed to impair the force and effect which the full faith and credit clause and the Act of Congress require to be given to such a judgment outside the state of its rendition. *Milwaukee County* v. *White Co., supra,* 277, 278.

---

[4] See, e. g., *Huntington* v. *Attrill,* 146 U. S. 657; *Fall* v. *Eastin,* 215 U. S. 1; *Olmsted* v. *Olmsted,* 216 U. S. 386; *Converse* v. *Hamilton,* 224 U. S. 243; *Hood* v. *McGehee,* 237 U. S. 611; *Broderick* v. *Rosner,* 294 U. S. 629, 642; cf. *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265, 293 with *Milwaukee County* v. *White Co., supra,* 278.

The constitutional command requires a state to enforce a judgment of a sister state for its taxes, *Milwaukee County* v. *White Co., supra,* or for a gambling debt, *Fauntleroy* v. *Lum, supra,* or for damages for wrongful death, *Kenney* v. *Supreme Lodge, supra,* although the suit in which the judgment was obtained could not have been maintained under the laws and policy of the forum to which the judgment is brought. It compels enforcement of a judgment in that forum, even though a suit upon the original cause of action was barred there by limitations before the judgment was procured, *Christmas* v. *Russell, supra; Roche* v. *McDonald,* 275 U. S. 449. It demands recognition of it even though the statute on which the judgment was founded need not be applied in the state of the forum because in conflict with the laws and policy of that state. *Kenney* v. *Supreme Lodge, supra; Titus* v. *Wallick, supra; Williams* v. *North Carolina, supra.*

These consequences flow from the clear purpose of the full faith and credit clause to establish throughout the federal system the salutary principle of the common law that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered, so that a cause of action merged in a judgment in one state is likewise merged in every other. The full faith and credit clause like the commerce clause thus became a nationally unifying force. It altered the status of the several states as independent foreign sovereignties, each free to ignore rights and obligations created under the laws or established by the judicial proceedings of the others, by making each an integral part of a single nation, in which rights judicially established in any part are given nation-wide application. *Milwaukee County* v. *White Co., supra,* 276, 277; *Williams* v. *North Carolina, supra,* 295. Because there is a full faith and credit clause a defendant

may not a second time challenge the validity of the plaintiff's right which has ripened into a judgment and a plaintiff may not for his single cause of action secure a second or a greater recovery.

Here both Texas and Louisiana have undertaken to adjudicate the rights of the same parties arising from a single injury sustained in the course of employment under the same contract. Each state has awarded to respondent compensation for that injury. But whether the Texas award purported also to adjudicate the rights and duties of the parties under the Louisiana law or to control persons and courts in Louisiana is irrelevant to our present inquiry. For Texas is without power to give extraterritorial effect to its laws. See *New York Life Insurance Co. v. Head,* 234 U. S. 149; *Home Insurance Co. v. Dick,* 281 U. S. 397. The significant question in this case is whether the full faith and credit clause has deprived Louisiana of the power to deny that the Texas award has the same binding effect on the parties in Louisiana as it has in Texas.

It is not, as the state court thought, a sufficient answer to the bar of the Texas award to assert that Louisiana has a recognized interest in awarding compensation to Louisiana employees who are injured out of the state, see *Alaska Packers Assn. v. Industrial Accident Comm'n, supra,* for Texas, the state in which the injury occurred, has a like interest in making an award, see *Pacific Employers Ins. Co. v. Industrial Accident Comm'n, supra.* And in each of the cases we have cited, the state to which the judg- ment was brought had an interest in the subject matter of the suit and a public policy contrary to that of the state in which the judgment was obtained. No convincing reason is advanced for saying that Louisiana has a greater interest in awarding compensation for an injury suffered in an industrial accident, than North Carolina had in

determining the marital status of its domiciliary against whom a divorce decree had been rendered in another state, *Williams* v. *North Carolina, supra,* or Mississippi in stamping out gambling within its borders, *Fauntleroy* v. *Lum, supra,* or South Carolina in requiring a parent to support his child who was domiciled within that state, *Yarborough* v. *Yarborough,* 290 U. S. 202.

In each of these cases the words and purpose of the full faith and credit clause were thought to demand that the interest of the state in which the judgment was obtained and was res judicata, should override the laws and policy of the forum to which the judgment was taken. And we can perceive no tenable ground for saying that a compensation award need not be given the same effect as res judicata in another state as it has in the state where rendered.[5]

---

[5] But cf. American Law Institute, Restatement of Conflict of Laws (1934) § 403:

"Award already had under the Workmen's Compensation Act of another state will not bar a proceeding under an applicable Act, but the amount paid on a prior award in another state will be credited on the second award."

This would seem to be intended as nothing more than a statement of local rules of conflict of laws when unaffected by the full faith and credit clause, since full faith and credit, if it does not require that a first award bar a second, would not compel credits upon the second award of payments made under the first. If more was intended, the statement is, as the Advisers to the American Law Institute stated, "surprising." Proceedings of American Law Institute (1932) Vol. X, p. 76. It is the more so as the statement would then conflict with the *ratio decidendi* of *Chicago, R. I. & P. Ry. Co.* v. *Schendel,* 270 U. S. 611, which had been decided some six years before. Even as a matter of local law while the decision of the state courts on this point are in conflict, the following are contrary to the rule expressed in the Restatement: *Hughey* v. *Ware,* 34 N. M. 29, 276 P. 27; *Tidwell* v. *Chattanooga Boiler & T. Co.,* 163 Tenn. 420, 648, 43 S. W. 2d 221, 45 S. W. 2d 528; *DeGray* v. *Miller Bros. Const. Co.,* 106 Vt. 259, 277–278, 173 A. 556.

Such was the decision of this Court in *Chicago, R. I. & P. Ry. Co.* v. *Schendel, supra,* in which recovery of an award of compensation under the Iowa Workmen's Compensation Act was held to bar recovery in a suit against the employer in Minnesota to recover for the same injury under the Federal Employers' Liability Act. Both states had, as in this case, allowed recovery, as they were free to do but for the full faith and credit clause. This Court held that the employee, having had his remedy by the judgment in Iowa, was precluded by the full faith and credit clause from pursuing a remedy for his injury in another state. The remedies afforded to respondent by the Texas and Louisiana Workmen's Compensation Laws are likewise rendered mutually exclusive by the Texas judgment and the full faith and credit clause. The Texas award, being a bar to any further recovery of compensation for respondent's injury, is, by virtue of the full faith and credit clause, exclusive of his remedy under the Louisiana Act.

It lends no support to the decision of the Louisiana court in this case to say that Louisiana has chosen to be more generous with an employee than Texas has. Indeed no constitutional question would be presented if Louisiana chose to be generous to the employee out of the general funds in its Treasury. But here it is petitioner who is required to provide further payments to respondent, contrary to the terms of the Texas award, which, if the full faith and credit clause is to be given any effect, was a conclusive determination between the parties that petitioner should be liable for no more than the amount of the Texas award. For this reason it is not enough to say that a practical reconciliation of the interests of Texas and Louisiana has been effected by the Louisiana court. There has been no reconciliation of the liability established by the Louisiana judgment with the rights conferred on petitioner by the Texas award and the full faith and credit clause.

Here the finding of the Louisiana court that the Texas award had the force and effect of a judgment of a court of that state and is res judicata there, is in conformity to the determinations of the courts of Texas and has not been challenged by the parties. We have no occasion to consider what effect would be required to be given to the Texas award if the Texas courts held that an award of compensation in another state would not bar an award in Texas, for as we have seen, Texas does not allow such a second recovery. And if the award of compensation in Texas were not res judicata there, full faith and credit would, of course, be no bar to the recovery of an award in another state. *Chicago, R. I. & P. Ry. Co.* v. *Elder,* 270 U. S. 611, 622–623.

Whether the proceeding before the State Industrial Accident Board in Texas be regarded as a "judicial proceeding," or its award is a "record" within the meaning of the full faith and credit clause and the Act of Congress, the result is the same. For judicial proceedings and records of the state are both required to have "such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken."

The decision of the state court is not supported by the suggestion that the Texas award is not res judicata in Louisiana because respondent's suit there was on a different cause of action. When a state court refuses credit to the judgment of a sister state because of its opinion of the nature of the cause of action or the judgment in which it is merged, an asserted federal right is denied and the sufficiency of the grounds of denial are for this Court to decide. *Titus* v. *Wallick, supra,* 291 and cases cited; and see *Adam* v. *Saenger,* 303 U. S. 59, 64 and cases cited. Respondent's injury in Texas did not give rise to two causes of action merely because recovery in each state is

under a different statute, or because each affords a different measure of recovery.[6] *Chicago, R. I. & P. Ry. Co.* v. *Schendel, supra; Baltimore Steamship Co.* v. *Phillips,* 274 U. S. 316; see *Wabash R. Co.* v. *Hayes,* 234 U. S. 86, 90. The grounds of recovery are the same in one state as in the other—the injury to the employee in the course of his employment. The whole tendency of our decisions under the full faith and credit clause is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot split up his claim and *"a fortiori* he cannot divide the grounds of recovery."  *United States* v. *California & Oregon Land Co.,* 192 U. S. 355, 358. Respondent was free to pursue his remedy in either state but, having chosen to seek it in Texas, where the award was res judicata, the full faith and credit clause precludes him from again seeking a remedy in Louisiana upon the same grounds. The fact that a suitor has been denied a remedy by one state because it does not afford a remedy for the particular wrong alleged, may not bar recovery in another state which does provide a remedy. See *Troxell* v. *Delaware, L. & W. R. Co.,* 227 U. S. 434; cf. *Ash Sheep Co.* v. *United States,* 252 U. S. 159, 170. But as we decided in the *Schendel* case it is a very different matter to say that recovery can be had in every state which affords a remedy.

The suggestion that there is a second and different cause of action in Louisiana, merely because Louisiana law authorizes compensation, and in a different measure than does Texas, or because the jurisdiction of the court of one state depends on the place of the injury and that of the other on the place of the employment contract, would if accepted prove too much. Apart from the demands of full faith and credit, recovery in a transitory action for injury

---

[6] Any implication to the contrary in *Troxell* v. *Delaware, L. & W. R. Co.,* 227 U. S. 434, must be considered as overruled by *Wabash R. Co.* v. *Hayes,* 234 U. S. 86, 90; cf. *Baltimore Steamship Co.* v. *Phillips,* 274 U. S. 316, 323.

to person or property, whether in tort or for compensation, can of course only be had in conformity to the law of the state where the action is maintained. Even where the state of the forum adopts and applies as its own the law of the state where the injury was inflicted, the extent to which it shall apply in its own courts a rule of law of another state is itself a question of local law of the forum. *Finney* v. *Guy*, 189 U. S. 335; *Klaxon Co.* v. *Stentor Co., supra,* 496, 497; cf. *Worcester County Trust Co.* v. *Riley,* 302 U. S. 292, 299. And the law of a state is embodied as well in its common law rules as in its statutes. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, 78, 79; see Mr. Justice Holmes, dissenting in *Black & White Taxicab Co.* v. *Brown & Yellow Taxicab Co.,* 276 U. S. 518, 532–536.

If an employee employed in one state but injured in another has a different cause of action for compensation in each state because each has its own compensation statute, it could as well be argued in any case where plaintiff has recovered a judgment in one state, and seeks a second recovery in a second state for the same injury, that he is suing upon a second and different cause of action. But it has never been thought that an actionable personal injury gives rise to as many causes of action as there are states whose laws will permit a suit to recover for the injury or that despite the full faith and credit clause the injured person, more than one entitled to recover for breach of contract, could go from state to state to recover in each damages or compensation for his injury. A judgment in tort or in contract is not immune from the requirement of full faith and credit because the successful plaintiff could have maintained his suit under the law of other states and have secured a larger recovery in some, or because the jurisdiction of the court in one state to hear the cause may depend upon some facts different from the facts necessary to sustain the jurisdiction in another. Cf. *Baltimore Steamship Co.* v. *Phillips, supra; Eldred* v. *Bank,* 17 Wall.

545; *Wabash R. Co.* v. *Hayes, supra; Kenney* v. *Supreme Lodge, supra.* And we cannot say that a workmen's compensation award for injury stands on any different footing. In fact *Chicago, R. I. & P. Ry. Co.* v. *Schendel, supra,* held that it did not and we see no reason to depart from its ruling.

*Reversed.*

By Mr. Justice Jackson:

I concur with the opinion of the Chief Justice.

If the Court were to reconsider *Williams* v. *North Carolina,* 317 U. S. 287, in the light of the views expressed by Mr. Justice Black, I should adhere to the views I expressed in dissent there. Until we do so, I consider myself bound by that decision. Whatever might be the law if that case had never been decided, I am unable to see why the controlling principles it announced under the full faith and credit clause to reverse the North Carolina decision therein do not require reversal of the Louisiana decision under review. I agree with the dissent that Louisiana has a legitimate interest to protect in the subject matter of this litigation, but so did North Carolina in the *Williams* case. I am unable to see how Louisiana can be constitutionally free to apply its own workmen's compensation law to its citizens despite a previous adjudication in another state if North Carolina was not free to apply its own matrimonial policy to its own citizens after judgment on the subject in Nevada. Is Louisiana's social interest in seeing that its labor contracts carry adequate workmen's compensation superior constitutionally to North Carolina's interest in seeing that people who contract marriage there are protected in the rights they acquire? It is true that someone might have to take care of the Louisiana citizen who is injured but inadequately compensated in Texas, as it was true in the *Williams* case that someone might have to care for those deprived of their marriage status by the foreign divorce decree.

Overruling a precedent always introduces some confusion and the necessity for it may be unfortunate. But it is as nothing to keeping on our books utterances to which we ourselves will give full faith and credit only if the outcome pleases us. I shall abide by the *Williams* case until it is taken off our books, and for that reason concur in the decision herein.

MR. JUSTICE DOUGLAS, dissenting:

While I have joined in the opinion of MR. JUSTICE BLACK, certain observations in the concurring opinion lead me to add a few words.

I do not agree with the view that the full faith and credit clause is to be enforced "only if the outcome pleases us." We are dealing here with highly controversial subjects where honest differences of opinion are almost certain to occur. Each case involves a clash between the policies of two sovereign States. The question is not which policy we prefer; it is whether the two conflicting policies can somehow be accommodated. The command of the full faith and credit clause frequently makes a reconciliation of the two interests impossible. One must give way in the larger interest of the federal union. The question in each case is whether as a practical matter there is room for adjustment, consistent with the requirements of full faith and credit. *Williams* v. *North Carolina*, 317 U. S. 287, is a recent example. One domiciled in Nevada was granted a divorce from his North Carolina spouse on notice by publication. The question for us was whether that decree was a defense to a prosecution for bigamy in North Carolina. Such questions of status, i. e., marital capacity, involve conflicts between the policies of two States which are quite irreconcilable as compared with the present situation.

If the claim under the Texas Act had been denied because of statutory defenses accorded the employer, I do not

suppose that the requirements of full faith and credit would bar the subsequent claim under a Louisiana statute which did not recognize such defenses. At least *Troxell* v. *Delaware, L. & W. R. Co.,* 227 U. S. 434, which has never been overruled, points to that result for it held that a denial of recovery under a state act was no barrier to a suit under a federal act for the same injury. If the full faith and credit clause would not prevent a recovery under the Louisiana Act where an award under the Texas Act had been denied, I do not see how Louisiana can be prevented from granting a recovery after Texas has made an award. The action of Texas would be as definite and final an adjudication of the rights and duties of the parties under the Texas statute in the one case as in the other. Moreover, the two statutes are not mutually exclusive as was true in *Chicago, R. I. & P. Ry. Co.* v. *Schendel,* 270 U. S. 611. Thus a determination that an employer is under the Texas Act does not mean conversely that he is excluded from the coverage of Louisiana's law.

The principle of the *Troxell* case seems apposite here since the claim in Texas was only one for "compensation under the Employers Liability Act" of that State. And the Texas award purported to do no more than to adjudicate rights and duties under the Texas Act. For it provided that when fully paid it would discharge the insurer "from all liability by reason of *this claim for compensation.*" If the Texas award had undertaken to adjudicate the rights and duties of the parties under the Louisiana contract of employment, which we are told carries the right to compensation under the Louisiana Act (10 So. 2d 109, 112), the result would be quite different. Then the judgment, like the divorce decree in the *Williams* case, would undertake to regulate the relationship of the parties, or their rights and duties which flow from it, as respects their undertakings in another State. And since Texas would have had jurisdiction over the parties its

decree would be a bar to the present action in Louisiana. But there is nothing in the Texas proceeding or in the Texas award to indicate that that was either intended or done. The most charitable construction is that Texas undertook to adjust the rights and duties of the parties and to regulate their relationship only so long as they remained subject to the jurisdiction of Texas.

Under the circumstances disclosed the situation is thus quite different from the usual transitory action or from a decree which undertakes to sever marital bonds between one domiciled in a state and a non-resident. But even if the Texas award were less clear than I think it is, I would resolve all doubts against an inference that rights under the Louisiana contract were adjudicated in Texas. Such a course seems to me essential so that the greatest possible accommodations of the interests of the two States, consistent with the requirements of full faith and credit, may be had whether the matter be divorce, workmen's compensation or any other subject on which state policies differ.

On its face *Yarborough* v. *Yarborough*, 290 U. S. 202, might seem to look the other way. There a Georgia decree of permanent alimony for a child was held to be entitled to full faith and credit in South Carolina where the child subsequently sought additional allowances. But the Georgia decree was more clearly an adjudication of the aggregate liability of the defendant than was the Texas award in the present case, for it relieved the father on compliance with its provisions of "all payments of alimony." 290 U. S. p. 207. Moreover, the father was not a resident of South Carolina but had long been domiciled in Georgia. The Court specifically reserved the question whether the Georgia decree would be entitled to full faith and credit as a final discharge of the duty to support had the father been domiciled in South Carolina. 290 U. S.

p. 213. Here the Texas award is not only a limited one. The employee *is* domiciled in Louisiana, the employer is authorized to do business in Louisiana. The employment contract is a Louisiana contract. Louisiana has such a considerable interest at stake that I would allow its policy to be obliterated or subordinated only in case what took place in Texas is irreconcilable with what Louisiana now seeks to do. I do not think it is.

It is thus apparent that the decision of *Williams* v. *North Carolina* is no shelter in the present controversy.

MR. JUSTICE MURPHY joins in this dissent.

MR. JUSTICE BLACK, dissenting:

The respondent Hunt is a resident of Louisiana, employed in that state by the petitioner and sent by the petitioner to do work in Texas. While in Texas he was seriously injured in the course of his employment. Confined to a hospital he was told that he could not recover compensation unless he signed two forms presented to him. As found by the Louisiana trial judge there was printed on each of the forms "in small type" the designation "Industrial Accident Board, Austin, Texas." To get his compensation Hunt signed the forms and the Texas insurer began to pay. Returning to his home in Louisiana Hunt apparently discovered that his interests would be more fully protected under Louisiana law and notified the insurer of an intention to claim under the statute of that state. The insurer immediately stopped payment to him and notified the Texas Board to that effect. Four days later, without any request from Hunt, the Board notified him at his Louisiana home that a hearing would be held in Texas within two and a half weeks "to determine the liability of the insurance company" under Texas law. Hunt did not participate in that proceeding. The Texas Board thereafter made an award to him which, under the

law of Texas, was equivalent to a judgment against the insurer.   Before the Texas award became final Hunt, who had declined to accept any money under it, filed suit against his employer in the courts of Louisiana under the Workmen's Compensation Law of Louisiana.   He recovered a judgment for a substantially larger sum than had been allowed him under the Texas award, from which the Louisiana court deducted the sum he had already received from the Texas insurer.

The employer has contended here that the Texas award against the insurer was a judgment which under the full faith and credit clause precluded the employee from any further relief in the courts of Louisiana.   The Court today agrees with the employer, holding that while in "exceptional cases . . . the judgment of one state may not override the laws and policy of another, this Court is the final arbiter of the extent of the exceptions."   The Court declines to recognize an exception in the case now before us, buttressing its conclusion with a contention that the case of *Chicago, R. I. & P. Ry. Co.* v. *Schendel,* 270 U. S. 611, requires such a result.

I disagree.   As I see it, this case properly involves two separate legal questions: (1) Did Texas intend the award of its Industrial Accident Board against the insurer to bar the right granted the employee by the Louisiana Workmen's Compensation Law to collect from his employer for the same injury the difference between the compensation allowed by Texas and the more generous compensation allowed by Louisiana?   (2) Assuming the Texas award was intended to constitute such a bar, does the interest of Louisiana in regulating the employment contracts of its residents nevertheless permit it to grant that larger measure of compensation which as a matter of local policy it believes necessary?   The decision of the Court on both of these issues appears to me to be wrong.

452

## I.

Where a state court refuses to recognize the judgment of a sister state as a bar to an asserted cause of action, the full faith and credit clause cannot raise a federal question unless the judgment would have been a bar to a similar suit in that sister state. R. S. § 905, U. S. C. Title 28, § 687; *Titus* v. *Wallick,* 306 U. S. 282. Even where the judgment would bar the suit in the sister state, "as this Court has often recognized, there are many judgments which need not be given the same force and effect abroad which they have at home, and there are some, though valid in the state where rendered, to which the full faith and credit clause gives no force elsewhere." Dissenting opinion, *Yarborough* v. *Yarborough,* 290 U. S. 202, 213, 214, 215. Whether Texas intended that its award should bar the employee here from recovering compensation under the Louisiana law is an issue upon which Texas courts have not spoken. In fact, they absolutely refuse to entertain any suits at all based on the Louisiana Workmen's Compensation Law. *Johnson* v. *Employers Liability Corp.,* 99 S. W. 2d 979.

The general rule of res judicata announced by Texas courts is that a judgment on the merits constitutes "a finality as to the claim or demand in controversy, concluding parties and those in privity with them . . . as to every matter which was offered and received to sustain or defeat the claim or demand, [and] as to any other admissible matter which might have been offered for that purpose." *Rio Bravo Oil Co.* v. *Hebert,* 130 Tex. 1, 8, 9, 106 S. W. 2d 242, 246. The opinion of Section A of the Texas Commission of Appeals in *Ocean Accident & Guarantee Corp.* v. *Pruitt,* 58 S. W. 2d 41, 44–45, relied upon by the Court, presents an application of this rule to Texas workmen's compensation awards. There it was held that an employee who had been denied a compensation award by

the Accident Board could not bring a second proceeding before the Board against the same insurer to recover compensation for the same injuries. In the instant case the situation is entirely different. The parties are not the same; the issues are not the same; and the two proceedings are not under the same Act. The proceeding in this case before the Texas Board was against the insurer only and the award entered, by its express terms, was limited to a release of the insurance company from further liability. The liability of the employer under Louisiana law was not in issue before the Board and could not have been put in issue. The employer was not a party to that proceeding; nor was there "privity" between the insurer and the employer since the insurer's liability did not extend to rights which the employee might have against his employer under Louisiana law. Moreover the jurisdiction of the Accident Board is limited to administration of the Texas Workmen's Compensation Act; even if the issues of liability under Louisiana law had been raised they could not have been decided by that Board. The decision of this Court today, therefore, is tantamount to holding that Texas intended to extinguish a claim against the employer in a proceeding in which the employer was not a party and the issue of its liability under Louisiana law was not allowed to be raised. I cannot impute such an intention to Texas.

The statutes of Texas lend support to the view that the Accident Board's award was not intended to bar the employee's rights against his employer arising under the law of Louisiana. Under the Texas statutes an award of the Accident Board neither adds to nor subtracts from an employer's liability to an injured employee. That liability is fixed, not by an award, but by a tripartite contract implied by the Texas statute between the employer, the employee, and the insurer, under which the employee

agrees not to sue the employer for occupational injuries under the common law or statutes of Texas.[1]  An employee who fails to elect to retain his common law remedies against his employer is deemed to have waived only his "right of action at common law or under any statute of *this state*."[2]  (Italics supplied.)  Clearly this Texas statute did not intend that a workman who elected to come under the compensation act should thereby lose any rights created by the laws of other states.  That section of the Texas statutes relied upon by the Court requires no different result.  It provides that an employee injured "outside of the State" cannot recover under the Texas act if "he has elected to pursue his remedy and recovers in the state where such injury occurred."[3]  Plainly this latter statute pertains only to the right of recovery under Texas law; it does not purport to affect rights under the laws of other states.  Nor does it proceed on any theory of res judicata for if an employee fails to recover in the other state he can nevertheless recover an award in Texas.  And in any event the statute could not apply to the instant case, for this employee's injury did not occur "outside" of Texas.  The dictum of the *Travelers Insurance Co. v. Cason*, 132 Tex. 393, 396, 124 S. W. 2d 321, referred

---

[1] Cf. *Anderson-Berney Realty Co.* v. *Plasida Soria*, 123 Tex. 100, 67 S. W. 2d 222.  If petitioner had any defense to Hunt's suit under Louisiana law, it was not the award but the implied contract.  See *Middleton* v. *Texas Power & Light Co.*, 108 Tex. 96, 185 S. W. 556, aff'd 249 U. S. 152.  Petitioner, however, pleaded only the award for its defense.

[2] Texas Rev. Civ. Stat., Title 130, Art. 8306, § 3 (a).  I do not agree with the Court that § 3 of this Article purports to compel an employee to waive rights which arise under the laws of another state.  Such a construction would reduce the above quoted language of § 3 (a) to deceptive verbiage.

[3] Rev. Civ. Stat., Article 8306, § 19.  Apparently only one other state, Oregon, has a statute comparable to this.  See Oregon Code (1935, Supplement) § 49–1813a.

to by the Court, pertains to the rights of a Texas workman who was injured in Pennsylvania.

In the absence of compelling language this Court should not construe the statutes of Texas in such a manner that grave questions of their constitutionality are raised. Cf. *Yarborough* v. *Yarborough, supra,* 213, 214. It is extremely doubtful whether Texas has the power, by any legal device, to preclude a sister state from granting to its own residents employed within its own borders that measure of compensation for occupational injuries which it deems advisable. "A state can legislate only with reference to its own jurisdiction; and the full faith and credit clause does not require the enforcement of every right which has ripened into a judgment of another state or has been conferred by its statutes." *Broderick* v. *Rosner,* 294 U. S. 629, 642. The practical result of the decision here is to hold that Texas has power to nullify a Louisiana statute which gives the beneficial protection of workmen's compensation to an injured workman who is a resident of Louisiana and made his contract of employment there. I "am not persuaded that the full faith and credit clause gives sanction to such control by one state of the internal affairs of another." *Yarborough* v. *Yarborough, supra,* 214.

## II.

It is apparently conceded that Louisiana would not have been required to apply the Texas statute had there not been a judgment in the particular case by the Texas tribunal. This freedom of the state to apply its own policy in workmen's compensation cases despite a conflicting statute in the state in which the accident occurs rests on the theory that the state where the workman is hired or is domiciled has a genuine and special interest in the outcome of the litigation. *Alaska Packers Assn.* v. *Industrial Accident Comm'n,* 294 U. S. 532, 541–543, 549; cf. *Pacific*

*Employers Ins. Co.* v. *Industrial Accident Comm'n,* 306 U. S. 493, 503. These cases mark recognition of the fact that the authority of the states to act in any field is to be measured as much by vital state interests as by technical legal concepts. Cf. *Hoopeston Canning Co.* v. *Cullen,* 318 U. S. 313. The argument of state interest is hardly less compelling when Louisiana chooses to reject as decisive of the issues of the case a foreign judgment than when it rejects a foreign statute.

The interest of Texas in providing compensation for an injured employee who like respondent was only temporarily employed in the state is not the same as that of Louisiana where the respondent was domiciled and where the contract of employment was made. Someone has to take care of an individual who has received, as has respondent, an injury which permanently disables him from performance of his work. If employers or the consumers of their goods do not shoulder this responsibility, the general public of a state must. Neither state merely vindicates a private wrong growing out of tortious conduct. *McKane* v. *New Amsterdam Casualty Co.,* 199 So. 175, 179 (Ct. of App. of La., Orleans); *Texas Employers' Ins. Assn.* v. *Price,* 291 S. W. 287, 290. The Louisiana Act was passed in the interest of the general welfare of the people of Louisiana. *Puchner* v. *Employers' Liability Corp.,* 198 La. 922, 5 So. 2d 288.[4] If it chooses to be more generous to injured workmen than Texas, no Constitutional issue is presented.

---

[4] The classic theory of the interest of a state in workmen's compensation was expressed by this Court in upholding the constitutionality of a state compensation system: In the absence of a workmen's compensation system, "the injured workman is left to bear the greater part of industrial accident loss, which because of his limited income he is unable to sustain, so that he and those dependent upon him are overcome by poverty and frequently become a burden upon public or private charity." *New York Central R. Co.* v. *White,* 243 U. S. 188, 197.

The decision of the Court is not required by the *Schendel* case. In that case an employee brought an action in a Minnesota court under the Federal Employers' Liability Act. His employer brought an action in Iowa under the state law, the result of which was a holding by the Iowa court that the action had occurred in intrastate commerce. This Court held in the *Schendel* case, which was a review of the Minnesota proceedings, that the decision of the Iowa court that the accident occurred in intrastate commerce was res judicata and that the employee could not attempt to show that the accident had in fact occurred in interstate commerce as would have been necessary to bring the case within the coverage of the federal Act. The case is wholly distinguishable since the policy of the Federal Employers' Liability Act has not been thought to require that a federal award supplement a state workmen's compensation award. The statutes involved were not conflicting but were mutually exclusive, the federal Act covering only injuries in interstate commerce, U. S. C. Title 45, § 51 *et seq.*

Today's decision is flatly in conflict with accepted law and practice. The Restatement of Conflict of Laws, § 403 states categorically that an "award already had under the Workmen's Compensation Act of another state will not bar a proceeding under an applicable Act, but the amount paid on a prior award in another state will be credited on the second award," and one of the foremost studies of workmen's compensation states the same rule.[5] Even in the absence of an express statute several state courts have explicitly approved this practice. *Gilbert* v. *Des Lauriers Column Mould Co.,* 180 App. Div. 59, 167 N. Y. S. 274; *Interstate Power Co.* v. *Industrial Commission,* 203 Wis. 466, 234 N. W. 889; see similarly *McLaughlin's Case,* 274 Mass. 217, 174 N. E. 338; *Migues's Case,*

---

[5] Dodd, *Administration of Workmen's Compensation* (1936) pp. 819, 820. See also to the same effect 2 Beale, *The Conflict of Laws* (1935) § 403.1.

281 Mass. 373, 183 N. E. 847.   Texas itself for a time applied a similar ruling.   *Texas Employers' Ins. Assn.* v. *Price,* 300 S. W. 667.

North Carolina provides by statute in cases like the present that the employee should be entitled to receive compensation provided that if he receives compensation from a state other than North Carolina, he will be given no more compensation by North Carolina than would raise the total recovery to the maximum allowed by the North Carolina law.[6]   Six other states have similar statutes.[7] The Committee on Workmen's Compensation Legislation of the International Association of Industrial Accident Boards and Commissions has drafted a uniform state law on the subject which, were it applicable in the instant case, would permit the employee to waive his rights under the Louisiana law by bringing an action under the Texas law only by filing a written waiver with a Louisiana Commission which would not be binding until approved by such a Commission.[8]   This proposed uniform state law would presumably be unconstitutional under the decision announced today since it would leave in Louisiana the power to decide whether the employee should receive ad-

---

[6] N. C. Code (1939) § 8081 (rr).

[7] Florida: Florida Statutes (1941) § 440.09 (1); Georgia: Georgia Code (1933) § 114–411; Maryland: Maryland Annotated Code (1939), Flack's Edition, Art. 101, § 80 (3); Ohio: Page's Ohio General Code, § 1465–68; South Carolina: S. C. Code (1942) § 7035–39; and Virginia: Virginia Code (1942) § 1887 (37).   No less than thirty-four states have enacted statutes which expressly permit recovery of workmen's compensation under specified circumstances for injuries received in another state.   And the courts of nine additional states have construed statutes which are not express to achieve the same result.   See Schneider, Workmen's Compensation Law (1941) Vol. 1, c. 5, pp. 441–568; Schneider, Workmen's Compensation Statutes (1939), Vols. 1–4.

[8] U. S. Bureau of Labor Statistics Bulletin No. 577 (1933) pp. 15–16.

ditional compensation despite the effect which Texas might seek to give to its award.

Whether the theory is that Texas did not intend its judgment to bar a proceeding in Louisiana or that the Texas workmen's compensation law is so incompatible with the policy of Louisiana that Louisiana is not bound by the Texas judgment, the result should be the same: There should be no Constitutional barrier preventing a state in effect from increasing the workmen's compensation award of another state in a case in which it has jurisdiction over the participants and the social responsibility for the results. Where two states both have a legitimate interest in the outcome of workmen's compensation litigation, the question of whether the second state which considers the case should abide by the decision of the first is a question of policy which should be decided by the state legislatures and courts.[9] Certainly fair argument can be made for either disposition of the policy question. Texas itself decided the question one way by decision in the *Price* case, 300 S. W. 667, *supra*, and, to a limited extent, the other way by statute.[10] State laws vary, and uniformity is not the highest value in the law of workmen's compensation, a point well made by the Supreme Court of Wisconsin when confronted with this very prob-

---

[9] "The interest, which New Hampshire has, in exercising that control, derived from the presence of employer and employe within its borders, and the commission of the tortious act there, is at least as valid as that of Vermont, derived from the fact that the status is that of its citizens, and originated when they were in Vermont, before going to New Hampshire. I can find nothing in the history of the full faith and credit clause, or the decisions under it, which lends support to the view that it compels any state to subordinate its domestic policy, with respect to persons and their acts within its borders, to the laws of any other." Concurring opinion in *Bradford Electric Light Co.* v. *Clapper*, 286 U. S. 145, 163, 164.

[10] Rev. Civ. Stat., Article 8306, § 19.

lem in *Interstate Power Co.* v. *Industrial Commission,*
*supra,* 477:

"This state adopted a very liberal act, and it is reasonably
to be inferred that the legislature was more concerned with
making certain that workmen within its jurisdiction
should get all the benefits of the act than it was with any
conflicts or legal difficulties which might arise out of lack
of uniformity. Our plain duty is to give to the act its
intended effect, and to leave to the legislature the enact-
ment of provisions designed to limit its operation in the
interest of uniformity."

Much has been made in the argument here of the alleged
vice of double recovery which is said to be allowed the
respondent. Let me emphasize that there is no double
recovery. In the first place the Louisiana court has de-
ducted from its judgment the amount of the Texas pay-
ments. In the second place the aggregate of the awards
from both states, if added together, would be far less than
the total loss suffered by respondent. The Texas allow-
ance scarcely amounts to a "recovery" in the sense of
giving full compensation for loss, and has been described
by a Texas court to be "more in the nature of a pension
than a liability for breach of contract, or damages intact."
*Texas Employers' Ins. Assn.* v. *Price,* 300 S. W. 667, *supra,*
669. See also *Biddinger* v. *Steininger-Taylor Co.,* 25 Ohio
Dec. 603, 608.

The Court seems in some parts of its opinion to adopt a
wholly new and far reaching policy relating to the power
of states to allow complete indemnification for a personal
injury by permitting more than one suit against the
wrongdoer, and to engraft this policy on to the full faith
and credit clause. Courts schooled in the common law
have long objected to what has been designated "splitting
a cause of action." They have phrased this policy objec-
tion in many common law concepts, one of which has been

the doctrine of "election of remedies." This predilection of common law judges in favor of compelling the aggregation of all possible elements of damage into one law suit is here apparently elevated to a position of Constitutional impregnability in the full faith and credit clause. The Court now seems to interpret that clause to prohibit a recovery of full compensation for a personal injury in more than one suit even if one or more states think full compensation can best be accorded in this manner. The practical result of this drastic new Constitutional doctrine is that State B must give *more* faith and credit to State A's judgment for damages for personal injury than State A itself intended the judgment should be given. State A's and State B's judgments are said to be mutually exclusive, not because either state made them so, but apparently on the ground that the full faith and credit clause imposes a rule of substantive law which requires this result. This doctrine would accord to the full faith and credit clause a meaning which it would have had if its authors had stated, "Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State, *and in addition two recoveries shall never be allowed by separate states for losses resulting from a single personal injury.*" When the authors of the Constitution desired to prohibit two criminal prosecutions for the same offense, they had no difficulty in expressing their views.[11] Had they wished to hobble the states in their efforts to provide more than one remedy in order to accomplish full justice in civil cases, I think they could and would have expressed themselves with equal clarity and emphasis.

---

[11] United States Constitution, Fifth Amendment. It has been held that, consistent with the Fifth Amendment, the federal government can impose criminal liability upon an individual for the same conduct for which he has been tried and convicted under a state criminal statute. *United States* v. *Lanza,* 260 U. S. 377.

## III.

The effect of the decision of this Court today is to strike down as unconstitutional an important provision of the workmen's compensation laws of at least eleven states. For more than half a century the power of the states to regulate their domestic economic affairs has been narrowly restricted by judicial interpretation of the federal Constitution. The chief weapon in the arsenal of restriction, only recently falling into disrepute because of overuse, is the due process clause. The full faith and credit clause, used today to serve the same purposes, is no better suited to control the freedom of the states. The practical question now before us can be decided by the states in many ways and most of the states which have expressed themselves seem ready to dispose of the problem as has Louisiana. Our notions of policy should not permit the Constitution to become a barrier to free experimentation by the states with the problems of workmen's compensation.

MR. JUSTICE DOUGLAS, MR. JUSTICE MURPHY, and MR. JUSTICE RUTLEDGE concur in this opinion.