**Howard H. CHISM, Appellant,**

v.

**The K. KESSLER COMPANY, Appellee.**

**No. 21264.**

United States Court of Appeals
Fifth Circuit.

June 17, 1965.

---

R. Shearn Smith, Chris Dixie, Houston, Tex., Dixie & Schulman, Houston, Tex., of counsel, for appellant Howard M. Chism.

Vincent W. Rehmet, Houston, Tex., Barrow, Bland, Rehmet & Singleton, Houston, Tex., of counsel, for appellee.

Before RIVES and BROWN, Circuit Judges, and INGRAHAM, District Judge.

RIVES, Circuit Judge.

In this diversity action, appellant-plaintiff sued appellee-defendant for personal injuries received on September 14, 1957 when he fell approximately 40 feet from a water tank on which he was working as an employee of the defendant. He alleged that the defendant, though eligible, was not a subscriber to the Workmen's Compensation Laws of Texas, and that the plaintiff's injuries resulted from the defendant's failure to furnish him with a safe place to work, with sufficient help, and with proper and workable equipment. He sought to recover damages in the sum of $50,000.

The defendant admitted the jurisdictional averments and filed a "special answer" in which it alleged that plaintiff was hired as an employee of the defendant on or about April 26, 1957, at which time a written contract was entered into between plaintiff and defendant under the terms of which it was agreed that the Workmen's Compensation Law of Ohio was to be the exclusive remedy for any claims or injuries occurring to plaintiff while employed by defendant.[1] The answer further averred that the agreement was filed with the Industrial Commission of Ohio within ten days after it was executed, and that the agreement had never been terminated and was in force and effect on September 14, 1957, the date of the accident. It further alleged that after the accident plaintiff was paid benefits through the Ohio Bureau of Workmen's Compensation.

After oral deposition of the plaintiff, the deposition in writing of Erby Blankenship, defendant's foreman on the job when plaintiff was injured, and the defendant's answers to written interrogatories, the defendant moved for summary judgment. Attached to the motion were two affidavits and certain certificates from the Ohio Bureau of Workmen's Compensation.

The district court entered a full memorandum which included the following findings of fact:

> " * * * Benefits under the Ohio statute, in the form of both medical and hospital payments and compensation for temporary-total disability, were upon Plaintiff's application extended to and accepted by him before the institution of this suit. The record does not show that the com-

---

1. Such an agreement is authorized to be made under Ohio General Code, Section 1465–68.

pensation award to Plaintiff was ever the subject to a Court judgment. It is clear that the payments are based upon an unappealed from decision of the Ohio Bureau of Workmen's Compensation.

"The agreement between the parties provided that the Workmen's Compensation coverage in Ohio would be the exclusive remedy which Plaintiff would have against Defendant for injuries occurring in the course of his employment."

The principles of law as to the application of full faith and credit to the Ohio award of compensation and as to whether the parties were bound by the Ohio Workmen's Compensation Law were then extensively discussed. The memorandum concluded as follows:

"There is still remotely open on the record before the Court the possible factual argument that the award in Ohio is not, under Ohio law, res adjudicata in that state. In that instance, full faith and credit would not necessarily bar recovery of an award under the compensation scheme of another state or jurisdiction. Magnolia Petroleum Co. v. Hunt, supra (320 U.S. 430), at 443, [64 S.Ct. 208, 88 L.Ed. 149]; Chicago, R. I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 622–623, 46 S.Ct. 420, 70 L.Ed. 757. But the case at bar is a common law action in Texas which is expressly precluded by the contract between the parties and by the Ohio statute. This action is clearly prohibited by the constitutional command of full faith and credit to a now presumably final Ohio administrative award made in pursuance of the binding Ohio contract and statute.

"I conclude that the record in this case shows that there is no genuine issue as to any material fact.

"I further conclude that this Court has jurisdiction of the parties and the subject matter of this action.

"The Defendant's Motion for Summary Judgment is granted. Rule 56(c), F.R.C.P."

The memorandum was followed by a formal order granting the motion for summary judgment.

The appellant-plaintiff now insists that the court erred both as to fact and as to law. The plaintiff urges that genuine issues of fact exist as to whether plaintiff contracted to proceed under Ohio law, as to whether plaintiff made formal application for compensation under Ohio law, and as to whether any such award was entered in Ohio as to constitute a bar to plaintiff's suit in Texas. If in error on these factual contentions, the plaintiff nonetheless insists that the judgment is wrong as a matter of law and that he has a right to maintain his suit under the laws of Texas. We agree with the plaintiff that genuine issues of fact do remain undecided, and, hence, we do not reach the issues of law.

The plaintiff testified that he had no recollection of signing any agreement in connection with workmen's compensation that would cover him on his employment (R. 13). The defendant produced two different facsimiles of the claimed agreement. The first was referred to in its answer as "a true and correct copy" and attached as Exhibit A (R. 11 and 12). The plaintiff was the only employee whose name appeared on the agreement and the plaintiff's name appeared to be printed in ink, "Howard McClain Chism." The second facsimile was attached as Exhibit 1 to the defendant's motion for summary judgment (R. 18 and 19). It purported to bear the signatures of three of defendant's employees, the plaintiff's appearing last and being in script, "Howard Chism." The first is probably a copy as stated in the answer, though not an exact copy.

Each of the purported facsimiles is on printed form C 110 of the Ohio Bureau of Workmen's Compensation, and shows the date of plaintiff's signature to be April 26, 1957. The letter of acknowledgment of receipt of that form from

the Bureau shows that it covered not only the three employees whose names appear on the form attached to defendant's motion but twelve others, or a total of fifteen employees (R. 21, 22).

The make-up of the form C 110 is significant. All of the provisions of the agreement are printed on the first page. The separate second page bears at its top the following:

"The employees of The K. Kessler Company, Inc., Fremont, Ohio hereunto affix their signatures together with their residences, date of signing and place of signing, and the name of the State or States in which work is, or is to be, performed."

There follow some thirty-one dotted lines provided for signatures of employees, beneath which is the following:

"The employer, being duly authorized in the premises, hereunto affixes his, their or its signature at Fremont Ohio this 30th day of April , 1957.

The K. Kessler Company, Inc.
(Employer)
By [/s/] R. E. Wasserman (Title)
"Secretary Treasurer
(This agreement should be signed by the owner, partner, or officer if a corporation.)"

It would seem probable that the form C 110 filed with the Ohio Bureau bore not only the second page containing plaintiff's claimed signature but one or more other such pages containing the signatures of other employees. Whether the one first page was always kept with the several second pages as employees' signatures were obtained is not certain. The plaintiff may have signed this second page without any knowledge or notice of the provisions of the agreement appearing on the first page. The defendant answering interrogatories stated that R. E. Wasserman, Fremont, Ohio, was the person who made the contract of employment with Howard Chism, and that Mr. Wasserman was still employed by the defendant (Supp. R. 10).[2] However, neither Mr. Wasserman nor any other witness was produced to testify that provisions of the agreement appearing on page 1 were called to the attention of the plaintiff. Under all of these circumstances, plaintiff's testimony that he had no recollection of signing any such agreement created a very real and genuine issue of fact.

Further, it does not appear with certainty that any agreement signed on April 26 remained in effect on September 14, the date of the accident. The plaintiff testified that he had been working for the defendant for only about a week before the accident on September 14, but that he had also worked for the defendant during the summer of 1957 and for four or five months before the accident (Supp.R. 12, 13). This apparently contradictory testimony may possibly be explained by the statement of plaintiff's wages from April 6 to September 14, 1957, filed by the defendant with the Ohio Bureau (R. 24). That statement shows wages paid for all weeks from April 6 to September 14, except for the four weeks preceding the week of September 14 and no wages paid for those four weeks. Whether plaintiff left defendant's employment and was rehired, as part of his deposition would indicate, does not appear.

The plaintiff had received total compensation in the amount of $718.71, and his medical expenses totaling $821.41 had been paid. In his deposition the plaintiff admitted receiving the compensation checks (R. 14). The plaintiff further testified (R. 14):

"Q. In connection with these payments that were made to you and that you have told me you received from the Bureau of Workman's (sic) Compensation up there in Columbus, Ohio, did they ever make any kind

2. R. E. Wasserman, Secretary Treasurer, appears to have signed the contract on behalf of the defendant.

of an award or decision up there in Columbus as far as you know as to how much you were entitled to receive as a result of this accident?

"A. No, sir.

"Q. Were you sent any papers by either the Bureau of Workman's (sic) Compensation up there in Ohio that sent you those checks or from any insurance company or from your employer, the K. Kessler Company, in the nature of a settlement or anything of that nature, anything that you had to sign?

"A. No, sir.

"Q. Did you yourself file any sort of a claim or anything in writing with the Bureau of Workman's (sic) Compensation in Columbus, Ohio, or have anybody do it for you?

"A. No, sir."

Erby Blankenship, plaintiff's foreman, testified:

"To the Tenth Cross-Interrogatory he answers:

"Yes. I made out the accident report and supplied him with the necessary forms for his compensation and hospital bill.

"To the Eleventh Cross-Interrogatory he answers:

"I witnessed his signature on the accident report. The way I understand it is from this report that the application is made for conmepsation.

"To the Twelfth Cross-Interrogatory he answers:

"Yes. I mailed all applications and accident report to the Company that they require me to fill out as a form."

Peculiarly, an examination of the application for compensation filed with the Ohio Bureau (R. 23) does not bear plaintiff's signature, but in the place provided for signature of applicant contains the mark "X" and the words "Broke right arm," apparently in the same handwriting with which the blanks in the application are filled in including the signature of attesting witness Erby Blankenship. It would appear that the application was signed by cross mark with the words "Broke right arm" written in as an explanation for the absence of plaintiff's signature. The evidence is very sketchy as to whether plaintiff understood the application which bore the X mark.

Of utmost importance, we find in the record no "award" of compensation whatsoever. The only reference to an award is in the affidavit of R. E. Harrington which lists the several payments of medical expenses totaling $821.41 and of compensation to plaintiff totaling $718.71, and concludes that:

"I hereby certify that the above is a true listing of the awards made to and on the behalf of Howard McClain Chism, Claim No. 2133010, by the Bureau of Workmen's Compensation of Ohio, as of November 20, 1958."

That does not seem enough to support the district court's finding "that the payments are based upon an unappealed from decision of the Ohio Bureau of Workmen's Compensation" (R. 20). Significantly, the defendant did not claim or refer to any award either in its answer (R. 9 and 10) or in its motion for summary judgment (R. pp. 15, 16, 17). We have difficulty in believing that defendant's counsel overlooked the awards mentioned in Mr. Harrington's affidavit if they actually existed.

It is clear that the affirmative defense pleaded was not established with such certainty as to justify the entry of summary judgment.[3]

There is present no case or controversy to justify discussion and decision of the interesting legal questions which would

---

3. United States v. Diebold, Inc., 1962, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176; United States v. Morgan, 5 Cir. 1963, 321 F.2d 781, 787; National Screen Service Corporation v. Poster Exchange, Inc., 5 Cir. 1962, 305 F.2d 647, 651; Kilfoyle v. Wright, 5 Cir. 1962, 300 F.2d 626, 629.

be presented if the established facts were as found by the district court.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.