598 So.2d 662 (1992)
Colleen Francis King MILES, Plaintiff-Appellant,
v.
Douglas Wade PERRONCEL, Defendant-Appellee.
No. 90-1143.
Court of Appeal of Louisiana, Third Circuit.
April 16, 1992.
*663 James E. Mixon, Columbia, for plaintiff-appellant.
McHale, Bufkin & Dees, Robert M. McHale, Lake Charles, for defendant-appellee.
Before GUIDRY, J., and MARCANTEL and HOOD, JJ. Pro Tem.
GUIDRY, Judge.
In this suit, plaintiff, Colleen Miles, seeks judgment against defendant, Douglas Perroncel, for child support arrearages in the amount of $19,250.00 and in connection therewith seeks to have made executory a Texas judgment dated August 6, 1981 which awarded her child support in the amount of $250.00 monthly from August 10, 1981. The trial court dismissed plaintiff's demand for arrearages and recognized and made executory the Texas divorce decree only insofar as it affected the marital status of the parties and awarded *664 custody of their minor child, Cherie Marie Perroncel, to plaintiff-appellant. The trial court concluded that the Texas court did not have personal jurisdiction over Perroncel and, therefore, could not render a money judgment against him. Plaintiff appeals.
Douglas and Colleen were married in Lafayette, Louisiana on July 1, 1977. They established their matrimonial domicile in Lafayette. Their only child, Cherie Marie Perroncel, was born on July 11, 1978. The couple physically separated in August, 1979, at which time Colleen moved with her daughter to Baytown, Texas to live with her family. Soon thereafter, she moved into her own apartment in Baytown. The testimony adduced at trial conflicts as to what occurred thereafter.
Plaintiff testified that Douglas followed her to Baytown later in the month of August. According to her, the couple reconciled and then defendant moved into her apartment. A few months later, the family moved to Houston where Colleen was working and Douglas stayed home and cared for the child. In January, 1980, the plaintiff was forced to quit her job because she had broken her arm and was unable to continue the type of work she was doing. They moved back to Lafayette for a very brief period and then to Lake Charles where Douglas had obtained employment. Douglas worked there for approximately two months, then lost his job. The couple then moved back to Lafayette until sometime during the summer of 1980. At that point in time the parties again separated and Colleen moved with her child to Tyler, Texas.
Colleen testified that, while in Baytown and Houston, Douglas stayed with her "all the time". She stated that Douglas only returned to Lafayette on a few occasions to see his parents. She testified that Douglas brought his clothes with him to Baytown, and it was her impression that he intended to remain in Texas. She acknowledged that they both had drinking and drug problems during this time period, but also stated that they abstained from such activity for the most part during the time they were together in Texas.
Douglas characterized the time spent by him in Texas as a series of short visits. Douglas testified that he would hitchhike to Baytown and Houston for the sole purpose of seeing his daughter, stay a couple of days, then return to Lafayette. According to Douglas, he never intended to remain in Texas and, for the entire time, considered his home to be in Lafayette. During Colleen's five month stay in Texas, Douglas claimed he stayed with her a cumulative amount of six weeks at most for the sole purpose of taking care of his daughter. He denied any reconciliation, explaining that they decided to "get back together" just prior to returning to Louisiana.
In January, 1981, approximately six months after moving to Tyler, plaintiff filed suit for divorce in the 321st Judicial District Court for Smith County, Texas. Jerry Bain, her attorney in the Texas proceeding, testified that soon after the suit was filed he sent a copy of the petition and a letter dated February 5, 1981 to Douglas' parents. He also sent a waiver of citation to Douglas which was never returned. An attempt to serve defendant by non-resident personal notice pursuant to the applicable Texas Long Arm Statutes[1] was also without success as the Lafayette Parish Sheriff's Office was unable to locate Douglas. Thereafter, Bain received a letter dated February 13, 1981 from Bertrand DeBlanc, Jr., a Lafayette attorney. In the letter, DeBlanc stated, "I have been retained by Mr. Perroncel to represent him in this divorce action". DeBlanc then informed Bain of his objection to Texas as the proper jurisdiction and venue for the suit. He then offered to negotiate a support and visitation agreement that would be satisfactory to both parties. Although not clear from the record, it appears that the defendant's parents informed him of the Texas proceedings and their receipt of the petition, after which Douglas sought the advice *665 of DeBlanc. DeBlanc then wrote the February 13th letter to Bain stating that he "represented" Perroncel.
Bain next sought court approval to serve DeBlanc as Douglas' legal representative pursuant to Rule 106(b) of the Texas Rules of Civil Procedure.[2] After a hearing, the Texas court approved the substituted service upon DeBlanc, and the record reflects that Douglas indeed was served on June 30, 1981.
Douglas and DeBlanc did not appear in the Texas Court either generally or specially to object to the personal jurisdiction of the Texas Court. On August 6, 1981, the 321st Judicial District Court for Smith County, Texas rendered the default judgment at issue. The judgment decreed a divorce between the parties and granted custody of the minor child to Colleen and visitation privileges to Douglas. In addition, the judgment ordered the defendant to pay $250.00 per month of child support commencing August 10, 1981. The decree also purported to divide the property of the former marriage and ordered Douglas to pay plaintiff $1,500.00 as a contribution toward payment of her attorney's fees. Bain sent a copy of this judgment to DeBlanc with cover letter dated August 25, 1981.
DeBlanc testified that he did not and could not legally enroll as Douglas' counsel of record in the Texas proceedings since he was not licensed to practice law in that state. He stated that although the defendant sought his advice on a possible visitation agreement, he did not recall any contact with the defendant after April 9, 1981. DeBlanc noted that this last contact was prior to his receipt of the divorce petition on June 30, 1981. DeBlanc stated that, at the time he was served, Douglas owed him a substantial amount of unpaid legal fees, and he felt Douglas was avoiding contact with him. Finally, DeBlanc stated that he was unable to contact the defendant when he was served with the petition. According to DeBlanc, Douglas never actually received citation to appear in the Texas court but did have actual notice of the suit.
On January 25, 1988, Colleen filed this suit. Defendant answered asserting that the Texas judgment was invalid and should not be granted full faith and credit because it was rendered in violation of his due process rights. Douglas contended that the Texas court lacked the necessary personal jurisdiction over him to render a judgment ordering him to pay child support and attorney's fees.
After a hearing, the trial court recognized the divorce and custody provisions of the Texas judgment. The trial judge, however, ruled that the Texas court did not have personal jurisdiction over the defendant. Relying on Kulko v. Superior Court of California, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), the court held that Douglas' "minimum contacts" with the forum state, Texas, were not sufficient to justify the exercise of personal jurisdiction over him.
It is clear from the "Reasons for Ruling" rendered December 14, 1989, that the trial court accepted Douglas' characterization of the nature of his and Colleen's relationship and the nature of his contacts with the State of Texas during the period August *666 1979 to January 1980. In its reasons, the court found, as a matter of fact, that defendant "... lived [in] or visited ... Texas occasionally and only for brief periods of time". The trial judge noted that defendant only brought necessary clothing to Texas and never sought or obtained employment while there. "Minimum contacts" were found to be inadequate to support the Texas court's assertion of personal jurisdiction over the defendant. As such, the trial court refused to grant full faith and credit to the child support and attorney's fees portion of the Texas judgment.
On appeal, Colleen urges that the trial court erred in concluding that the Texas court lacked personal jurisdiction over the defendant. In this connection, she argues trial error in the court's findings that the couple did not reconcile while in Texas and that Douglas only "visited" Texas and never established a residence there.
Factual determinations of the trial court are subject to the "manifest error/clearly wrong" standard of appellate review reiterated by our Supreme Court in Rosell v. Esco, 549 So.2d 840 (La.1989). In Rosell, the court stated:
"It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La.1978); A. Tate, `Manifest Error' Further observations on appellate review of facts in Louisiana civil cases, 22 La. L.Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La. 1985). In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.2 See, F. Maraist, The Work of the Louisiana Appellate Courts for the 1978-1979 TermA Faculty Symposium, Civil Procedure, 40 La.L.Rev. 761, 764 (1980); Comment, Appellate Review of Facts in Louisiana Civil Cases, 21 La.L.Rev. 402, 412 (1961); Cf: Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident *667 & Indemnity Co., 367 So.2d 300, 301 (La.1979)."
(footnotes omitted).
Rosell, supra, at 844.
While we may feel that our own reasonable evaluation of the evidence presented would result in factual determinations which are different from that of the trial court, we cannot say that the trial court's determinations are clearly wrong in light of the fact that conflicting testimony yields two permissible views of the evidence. Under Rosell and the jurisprudence cited therein, credibility evaluations upon which factual findings are based are the sole province of the trial court. We are unable to conclude that the trial court's factual findings in this case are clearly wrong.
Therefore, the single issue on appeal is whether, given the factual findings of the trial court, the defendant established sufficient "minimum contacts" with the forum state such that Texas' exercise of personal jurisdiction over the defendant did not violate his due process rights, i.e., "offend traditional notions of fair play and substantial justice". International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). For the reasons which follow, we affirm the trial court's conclusion that, under the particular facts of this case, the defendant's "minimum contacts" with the State of Texas were insufficient to warrant that state's assertion of personal jurisdiction over him.
Under the Full Faith and Credit Clause of the United States Constitution, a Louisiana court is generally required to recognize the validity and enforceability of a judgment rendered by a foreign forum. However, full faith and credit is not due if the court in the foreign forum lacked jurisdiction over the parties or the subject matter of the controversy. U.S. Const. Art. 4, § 1; Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943); Byrum v. Hebert, 425 So.2d 322 (La.App. 3rd Cir.1982); Holden v. Holden, 374 So.2d 749 (La.App. 3rd Cir.1979). In a suit to recognize a foreign judgment, the only issue of the foreign proceeding which a Louisiana court may inquire into is the question of the foreign court's jurisdiction over the parties or the subject matter of the suit. The law controlling this determination is the law of the state which rendered the judgment. Holden, supra; Fountain v. Fountain, 365 So.2d 1139 (La. App. 3rd Cir.1978). The burden of establishing that the foreign court lacked jurisdiction rests with the party assailing jurisdiction.
In this case, the law of the forum state, Texas, is made a part of the record. The trial judge did not analyze the jurisdictional issue under the guidelines of Texas' long-arm statute pertaining to support awards, Section 11.051 of the Texas Family Code, as required by the above cited jurisprudence. This was error, however, we ultimately determine that the trial court reached the correct result.
Under authority of Louisiana Code of Evidence Art. 202(A),[3] in effect on the date of this trial, we take judicial notice of the applicable Texas statute and the jurisprudence interpreting it.
The Texas statute conferring long-arm personal jurisdiction in a parent-child relationship case provides:
"§ 11.051. Acquiring Jurisdiction Over Nonresident
In a suit affecting the parent-child relationship, the court may exercise status or subject matter jurisdiction over the suit as provided by Subchapter B of this chapter.1 The court may also exercise personal jurisdiction over a person on whom service of citation is required or over the person's personal representative, *668 although the person is not a resident or domiciliary of this state, if:
(1) the child was conceived in this state when at least one biological parent was a resident of this state and the person on whom service is required is a parent or an alleged or probable father of the child;
(2) the child resides in this state as a result of the acts or directives or with the approval of the person on whom service is required;
(3) the person on whom service is required has resided with the child in this state; or
(4) there is any basis consistent with the constitutions of this state and the United States for the exercise of the personal jurisdiction."
Tex.Fam.Code Ann. § 11.051 (Vernon 1975). Plaintiff contends that, since this statute is similar to La.R.S. 13:3201, we should analyze the jurisdictional issue according to the tenets of and jurisprudence interpreting our Long-Arm statute. This argument ignores the clear and well settled principle that we must analyze this issue with reference to the law of the forum which issued the original decree.
In Texas, as in Louisiana, the courts recognize the distinction between jurisdiction over status required to grant a divorce and custody and jurisdiction over the person which is required to render a money judgment against a party. Perry v. Ponder, 604 S.W.2d 306 (Tex.Civ.App.Dallas 1980); see Imperial v. Hardy, 302 So.2d 5 (La.1974). Under the cited Texas statute, subsections (2), (3) and/or (4) are applicable to the particular facts of this case. In Dillon v. Medellin, 627 S.W.2d 737 (Tex. App.Houston (1st Dist.) 1981), writ refused, n.r.e. 633 S.W.2d 786 (Tex.1982), the court held that when the non-resident defendant fits factually into any or all of subsections (1) through (3), the court is also required by subsection (4) to determine whether the factors considered are "... constitutionally sufficient to meet the basic requirements of due process". Dillon, at 740.
Plaintiff asserts that Douglas falls squarely within the intendment of subsection (2) of Texas Family Code § 11.051. She claims that his acts or directives resulted in the child's move to Texas or, at least, he approved of the child's move there. Plaintiff's contention is not supported by Texas jurisprudence which interprets subsection (2). In Bergdoll v. Whitley, 598 S.W.2d 932 (Tex.Civ.App.Austin 1980), the parties were married in Texas. Afterwards, they established their marital residence in Tennessee. The couple was divorced by a Tennessee decree, which provided for the mother to have custody of the child and the father to pay $200.00 per month as child support. The mother then returned to Texas with her child, where she sought an increase in monthly support. The father filed a special appearance, pursuant to Texas Rule of Civil Procedure 120a, to object to the assertion of personal jurisdiction over him by the Texas court. The district court sustained the father's exception and the appellate court affirmed that decision. In doing so, the court found that an "act or directive" must be affirmative in nature; mere silent acquiescence in the child residing in Texas was not sufficient. In addition, the "approval" must be some affirmative manifestation of consent or ratification of the change in residence. Failure to object does not constitute approval. See also Ford v. Durham, 624 S.W.2d 737 (Tex.App.Fort Worth 1981), writ dism. woj.
Considering the facts of the case sub judice, we conclude that Douglas performed no act or directive which resulted in his child residing in Texas. Likewise, the change in residence did not result from any affirmative approval on his part. The child resided in Texas, albeit without objection on Douglas' part, because her mother moved there after the parties physically separated. Therefore, we conclude that Texas did not have personal jurisdiction over Douglas Perroncel under the provisions of Tex.Fam.Code Ann. § 11.051(2).
Plaintiff next argues that Douglas "resided with the child" in Texas, making him subject to personal jurisdiction under *669 subsection (3) of the cited statute. The defendant testified that he merely occasionally visited his daughter in Texas and did not become a resident of Texas. The trial judge found that "[T]he defendant lived or visited plaintiff [sic] and their daughter in Texas occasionally and only for brief periods of time". Apparently, the court felt that the time spent by the defendant in Texas did not constitute the establishment of residence there. We cannot say that this finding is clearly wrong. See Rosell, supra. While it is undisputed that Douglas spent at least six weeks during a five month period in Texas, the character of these "visits" were not such as to establish his residence there.
Finally, appellant argues that personal jurisdiction over Douglas is consistent with his due process rights under the United States Constitution since his "minimum contacts" with the State of Texas were sufficient such that the assertion of personal jurisdiction does not "offend traditional notions of fair play and substantial justice". International Shoe, supra. In determining that Douglas did not have sufficient "minimum contacts" with Texas, the trial court relied solely on the case of Kulko, supra, which authoritatively defined due process with respect to support orders. In that case, the parties had been married in California during a brief (three day) military stopover there. They lived the entirety of their marriage in New York. By written separation agreement, the father obtained custody of his two children and agreed to pay the mother $3,000.00 per year in child support for the time periods that the children were to spend with her. The mother then obtained a Haitian divorce which incorporated the terms of the prior agreement. Soon afterwards, the father permitted one of the children to live with her mother. Two years later, their son followed his sister to California without his father's approval. The mother then sued in California for custody and an increase in child support. The father appeared specially to object to personal jurisdiction over him on the support issue. The Supreme Court, in applying the International Shoe test, concluded that the quality and nature of the father's activity with respect to the State of California were not sufficient such that it would be reasonable and fair to require him to conduct his defense in that state. The father's active consent to his daughter's move to California, according to the court, did not equate to his having "purposefully availed himself" of the "benefits and protections" of California's laws. Kulko, supra, 98 S.Ct. at 1698, citing Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).
We realize that, in this case, defendant-appellee's contact with the State of Texas was greater than was the contact of the father in Kulko with the State of California. We are bound, however, to not mechanically apply the "minimum contacts" test; rather, we must weigh the facts of each case to determine if the requisite "affiliating circumstances" are present. Kulko, supra, at 1697, citing Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
The landmark case in Texas applying the "minimum contacts" test is O'Brien v. Lanpar Company, 399 S.W.2d 340 (Tex. 1966), in which the Texas Supreme Court adopted a more explicit three part test than that which was enunciated in International Shoe, supra. The tripartite test requires a determination of (1) whether the defendant has engaged in a purposeful act or transaction within the state, (2) whether the cause of action resulted from the defendant's activity within the state, and (3) whether the assertion of jurisdiction comports with "traditional notions of fair play and substantial justice". O'Brien, supra, at 342.
We find guidance in the application of the "minimum contacts" test in the previously cited case of Bergdoll v. Whitley, supra. In that case, the Court of Civil Appeals of Texas, Austin, reasoned:
"The following `minimum contacts' have been found to be sufficient to allow jurisdiction over the non-resident parent under Section 11.051: (1) marriage in Texas; (2) marital domicile in Texas at one time; (3) children conceived in Texas; *670 (4) children born in Texas; (5) respondent resided with children in Texas; (6) children continued to live in Texas after divorce; and (7) respondent visits children in Texas. Crockett v. Crockett, 589 S.W.2d 759 (Tex.Civ.App.Dallas 1979, no writ).
The mere fact that the parties married in Texas, that the child for whom support was sought was conceived and born in Texas, and that Texas was the last marital domicile seem to be the fewest contacts that the cases have established as sufficient to maintain jurisdiction under Section 11.051. Zeisler v. Zeisler, 553 S.W.2d 927 (Tex.Civ.App.Dallas 1977, writ dism'd).
In the case at bar, the trial court found that the only contacts that appellee had with Texas were (1) that he was married to appellant in Texas and (2) that his children now live in Texas with appellant. Appellee has always been a resident of Tennessee; his last physical presence in Texas occurred more than two years prior to the parties' divorce in 1972. In addition, there is no evidence of any act by which appellee purposefully availed himself of the privilege of conducting activities within the state of Texas, thus invoking the benefits and protection of its laws. Hanson v. Denckla, supra.
These two contacts with the state of Texas are not sufficient `minimum contacts' to pass constitutional muster and, thus, are not sufficient to allow invocation of Section 11.051...."
In the case sub judice, the trial court determined that the only contacts defendant had with Texas were (1) that he occasionally and briefly visited his daughter and her mother in Texas; and, (2) that his child now lives in Texas with plaintiff. Douglas has always been a domiciliary and resident of Louisiana. The parties were married in Louisiana and their child was conceived and born in Louisiana. They established a marital domicile in this state, which was the situs of their last marital domicile. In addition, the defendant did not purposefully direct or affirmatively approve of his daughter's change of residence to Texas. His last physical presence in the state was during his visits there in 1979 and the early part of 1980.
The quality and nature of the contacts with Texas can only be described as weak and attenuated. Brief intermittent visits coupled with the fact that the child is in Texas due to the unilateral act of her mother leads us to conclude that the contacts in this case are not sufficient "minimum contacts". Accordingly, Texas' assertion of personal jurisdiction over Douglas Perroncel is not fair and reasonable and does not comport with "traditional notions of fair play and substantial justice". International Shoe, supra.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of these proceedings are assessed to plaintiff-appellant, Colleen Francis King Miles.
AFFIRMED.
NOTES
[1] Texas Family Code §§ 3.26 (Divorce, Annulment, or Declaration of Void Marriage) and 11.051 (Suit affecting parent-child relationship), infra.
[2] Rule 106 provides for traditional as well as substituted methods of service as follows:

"(a) Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by
(1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or
(2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.
(b) Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place or abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service
(1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or
(2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit."
[3] La.C.E. Art. 202(A) states:

"A. Mandatory. A court, whether requested to do so or not, shall take judicial notice of the laws of the United States, of every state, territory, and other jurisdiction of the United States, and of the ordinances enacted by any political subdivision within the court's territorial jurisdiction whenever certified copies of the ordinances have been filed with the clerk of that court."
We note that Comment (c) to this article provides that the term "law" in Paragraph A encompasses statutory law as well as judicial decisions of the foreign jurisdiction.