625 So.2d 1098 (1993)
Thelma LAVERGNE, Plaintiff-Appellee,
v.
LAKE CHARLES MEMORIAL HOSPITAL, Defendant-Appellant.
No. 92-1435.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
*1099 Robert Thomas Jacques Jr., Lake Charles, for plaintiff-appellee Thelma Lavergne.
Brian Lee Coody, Lake Charles, for defendant-appellant Lake Charles Memorial Hospital.
Before GUIDRY, THIBODEAUX and COOKS, JJ.
COOKS, Judge.
In this worker's compensation case, Thelma Lavergne (having a pre-existing back disorder) alleged she injured her lower back while lifting a chair during the course of her employment as a housekeeper with Lake Charles Memorial Hospital. Initially, the employer paid weekly benefits and medicals to Lavergne. However, it subsequently discontinued payment of all benefits on the ground that she refused to accept available employment, equal to or greater than her pre-injury wages, after achieving maximum medical recovery. Lavergne filed a claim with the Office of Worker's Compensation disputing the employer's decision to terminate benefits. The employer raised three defenses against Lavergne's claim contending: (1) At the time of initial employment she failed to disclose a known pre-existing back condition; (2) Her present condition did not result from an on the job accident; and (3) Her pre-injury medical status had been restored; thus, Lavergne's "continuing disability" was not connected to the alleged employment accident. After trial, the hearing officer rejected the employer's defenses and awarded Supplemental Earnings Benefits to Lavergne from the date the employer terminated payment of benefits.
Reviewing the record, we highlighted several inconsistencies in Lavergne's statements and marked in red her failure to disclose a pre-existing job related back condition. However, these notations on balance do not tip the "clearly wrong scale" in favor of reversal, particularly considering credibility evaluations are solely within the factfinder's province.
Lake Charles Memorial Hospital filed this appeal assigning the following errors for review:
"(1) The hearing officer erred in ruling that LSA-R.S. 23:1208 did not apply because Thelma Lavergne's `motive' for not disclosing her previous back problems was to obtain a job and not to obtain compensation benefits.
(2) The hearing officer erred in finding Thelma Lavergne proved by a preponderance *1100 of the evidence that an accident occurred while in the course and scope of employment and/or that said accident caused a disability.
(3) The hearing officer erred in finding that supplemental earnings benefits were due from January 11, 1991, when the hospital had made employment available to Thelma Lavergne which was within her capabilities."

FACTS
Thelma Lavergne began work with Lake Charles Memorial Hospital on January 20, 1987, as a housekeeper. She testified that while lifting a chair on March 19, 1987, she injured her lower back. Except for Lavergne's account, the incident was unwitnessed. She reported the accident immediately to her supervisor. As stated by Lavergne, despite the pain, she finished the work shift and arrived at work the following day. The next day an incident report was prepared and Lavergne sought medical treatment. Dr. William Foster determined immediate surgery was warranted to repair Lavergne's herniated disc. On April 2, 1987, he performed a semi-hemilaminectomy and discectomy at the L5-S1 level in Lavergne's back to repair the disc.
According to the record, Lavergne was involved in two work accidents while employed by Bertrand Trucking Service in 1981 and Louisiana Forest Products in 1982. She was examined and treated by Dr. Foster who determined, in 1984, that Lavergne suffered a herniated disc at the L5-S1 level. Dr. Foster felt surgery could be helpful; however, she declined to undergo the operation. Between 1982 and 1986 she worked with her husband hauling wood and junked automobiles. This work required heavy manual labor. Lavergne did not accurately complete Lake Charles Memorial Hospital's pre-employment application when first interviewed, failing to report any previous back problems.

STANDARD OF REVIEW
In worker's compensation cases, as in most civil cases, factual determinations of hearing officers are subject to the "manifest error/clearly wrong" standard of appellate review articulated in Rosell v. Esco, 549 So.2d 840 (La.1989), as follows:
"It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La. 1978); A. Tate, `Manifest Error' Further observations on appellate review of facts in Louisiana civil cases, 22 La.L.Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.2 See, F. Maraist, The Work of the Louisiana Appellate Courts for the 1978-1979 TermA Faculty Symposium, Civil Procedure, 40 La.L.Rev. 761, 764 (1980); Comment, Appellate Review of Facts in Louisiana Civil Cases, 21 La.L.Rev. 402, 412 (1961); Cf: Anderson v. City of Bessemer *1101 City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969)."
As to the credibility of witnesses, which includes the claimant, Rosell makes clear "the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Miles v. Perroncel, 598 So.2d 662 (La.App. 3rd Cir.1992).

APPLICABILITY OF LSA-R.S. 23:1208
At the time of the alleged employment accident, LSA-R.S. 23:1208 read:
"If, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, any person either for himself or any other person, willfully makes a false statement or representation, he shall be fined not more than five hundred dollars or imprisoned for not more than twelve months, or both. Any employee convicted under this section shall in addition cease to receive any compensation under this Chapter."
The hearing officer concluded Lavergne's false statement regarding the pre-existing medical condition and prior medical treatment was made to "obtain a job" with Lake Charles Memorial Hospital rather than "for the purpose of obtaining" worker's compensation benefits. We cannot say the hearing officer's factual conclusion was clearly wrong. As written, to prevent an employee from receiving compensation, this provision additionally requires that an employer establish the employee's false statement or representation was made "for the purpose of obtaining or defeating any benefit or payment" under the Worker's Compensation Act and the employee was convicted of violating the provision.
Admitting Lavergne was not convicted of violating the provision, Lake Charles Memorial Hospital argues its applicability, nevertheless, contending the provision was amended in 1989 to delete this requirement. Appellant correctly points out that the legislature, after the alleged accident, amended this provision as mentioned adding in particular:
§ 1208.1
"Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type."
We decline appellant's invitation to depart from clear law and jurisprudence requiring us to enforce the expressions of the legislature existing at the time of a work accident. The employer suggests that Lavergne's false statements, which "continued" during depositions taken after the changes became effective suffice to bring her within the auspices of the amendments. Even if we accept (as legally sound) the employer's position, the record does not contain any evidence the employer complied with the enforcement condition of LSA-R.S. 23:1208.1 which requires that "the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1." Obviously, the provision's wording (read in entirety) prevents its retroactive application to work accidents occurring before its adoption.
The inapplicability of LSA-R.S. 23:1208, as amended, does not end the inquiry suggests Lake Charles Memorial Hospital. Citing numerous *1102 cases, it urges this "section merely codifies what the court system has been doing throughout its history ... in dealing with claimants who have misrepresented their physical condition in order to obtain Worker's Compensation benefits." We have examined all the cases cited by appellant and find each case ultimately turned on the trial courts' "credibility" determinations which are always factual in nature. The holdings in these cases do not dictate that we depart from our accepted standard of appellate review recited earlier; nor do they support appellants' contention that in the past we have crossed the line of demarcation between "interpreting the law," as we are constitutionally authorized, and "determining the circumstances" precluding the payment of benefits under the Worker's Compensation Act, the latter authority clearly being vested with the legislature.
We reject, as well, appellant's assertion that the hearing officer failed to properly "discount" Lavergne's testimony in light of her concealment of the pre-existing condition and involvement in two previous work accidents. An appellate court should not disturb the trial court's factual findings in the absence of manifest error. Deciding whether or not to "discount" a witness' testimony because of inconsistencies or concealment of relevant medical information is part of the evaluation process. Stated differently, Canter v. Koehring Co., 283 So.2d 716 (La.1973), instructs "a reviewing court must give great deference to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are reasonable." The standard of review is so, in part, because it assures "the proper allocation of trial and appellate function between the respective courts." Virgil v. American Guarantee and Liability Insurance, 507 So.2d 825 (La.1987).

OCCURRENCE OF AN ACCIDENT AND CAUSATION
Again, the hearing officer's determination that Lavergne truthfully reported the occurrence of the alleged accident is purely factual in nature and rests chiefly on his "credibility" evaluation of her testimony. The fact that the accident otherwise was unwitnessed does not prevent the hearing officer from accepting Lavergne's version of its occurrence, even though she admittedly attempted to conceal her prior medical and work history. Lavergne immediately reported the accident to her supervisor; and she sought medical assistance two days later. The testimony of her treating physician confirmed she sustained an aggravation of a pre-existing herniated disc disorder. The hearing officer was not clearly wrong in accepting Lavergne's account of the accident.
Regarding "causation," pre-existing diseases or infirmities of employees do not break the causal chain of proof required to present a valid claim for benefits "if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed." Lucas v. Insurance Company of North America, 342 So.2d 591 (La. 1977); Johnson v. Travelers Insurance Co., 284 So.2d 888 (1973). We have accepted as well settled "when an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with [her] pre-existing disease or infirmity to produce [her] disability." Walton v. Normandy Village Home Ass'n, Inc., 475 So.2d 320 (La.1985), citing Haughton v. Fireman's Fund American Insurance Company, 355 So.2d 927 (La.1978) and Hammond v. Fidelity & Casualty Company of New York, 419 So.2d 829 (La.1982). Finding the etiology of a disease or infirmity is not critical. Simply put, the employee must show by a preponderance of evidence only that the work accident "contributed" to the disability, however slight; and, as a consequence, the employee is no longer able to *1103 perform work activities associated with the pre-injury job. Malone & Johnson, 13 Louisiana Civil Law Treatise, Worker's Compensation (2d ed.) § 256, p. 562.
The record contains testimony from several lay witnesses attesting to Lavergne's ability to perform heavy manual work just prior to the accident despite the diagnosed herniated disc disorder. Following Lavergne's 1982 accident while working for Louisiana Forest Products, Vance Beaver corroborated that she often hauled junked automobile from his place of business. When asked to describe her physical agility, he said she worked "like a man." Tillman Guillory, who was involved in the pulpwood industry, testified he hired Lavergne to haul wood from 1984-1985; and she performed the work "with no problem." Dr. Foster, who treated Lavergne following the 1982 accident, confirmed without doubt the chair lifting incident "made a pre-existing condition symptomatic or certainly aggravated it severely." Therefore, circumstantial and medical evidence existed to reasonably support the trial judge's factual conclusion that the injury Lavergne suffered while lifting the chair aggravated her pre-existing condition, ultimately producing her present disability. Despite subsequent surgery, Dr. Foster found Lavergne could not return to her pre-injury job which required moderate to heavy manual labor.
Apparently, appellant also contends Lavergne's pre-existing condition was not worsened by the subsequent accident and the later surgery "improved" her medical status, thus breaking the "causal relationship" between the accident and her continued disability. To prevail, an employer denying the existence of the presumed causal relationship "must produce evidence and persuade the trier of fact that it is more probable than not that the work-injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce [the] disability." Walton v. Normandy Village Home Ass'n, Inc., supra; McCormick § 345, at p. 826. Appellant seeks to overcome this presumption by argument only. It did not produce any evidence, medical or otherwise, tending to show Lavergne's pre-existing condition was not "accelerated or aggravated" by the alleged accident. The hearing officer was entitled to rely on the actual testimony presented at trial without reverting to argument or speculation. We find "no manifest" error in the hearing officer's rejection of the defense's arguments.

SUPPLEMENTAL EARNINGS BENEFITS ENTITLEMENT
Finally, appellant urges the hearing officer erred in finding Lavergne was entitled to receive Supplemental Earnings Benefits after the date of termination.
An SEB claimant must prove by a preponderance of evidence that the work related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of injury. Clark v. Welex, a Halliburton Co., 517 So.2d 1186 (La.App. 3rd Cir. 1987), writ denied, 521 So.2d 1170 (La.1988). In Tassin v. Cigna Insurance Company, 583 So.2d 1222 (La.App. 3rd Cir.1991) interpreting La.R.S. 23:1221(3)(c)(i) we said "if the employee is not employed or self employed or is earning less than he is able to earn, the employer must then show the employee is physically capable of performing employment which is offered or available." Since the accident, the record shows Lavergne has not engaged in any employment. To meet its statutory burden the employer presented testimony that once Lavergne achieved maximum cure it offered her three positions as a Housekeeper I, a Housekeeper II, and a Shift Supervisor. These positions supposedly were approved by Dr. Foster.
The hearing officer found the "actual job descriptions" of these positions, when fully reviewed at trial, did not fit the "light dutysedentary work" classification originally assigned Lavergne by Dr. Foster which he confirmed as accurate at the time of trial. Dr. Foster testified Lavergne suffered a 10 to 15% permanent partial disability directly related to the on the job injury. In his opinion, as a consequence, employers requiring workers to pass pre-employment physicals would be extremely reticent in hiring Lavergne. The Housekeeper I position was the same job performed by Lavergne prior to *1104 the accident and entailed moderate to heavy physical activity, including frequent bending and lifting. The second position was a higher level housekeeping job which also required moderate to heavy physical work. The third position, though supervisory in nature, demanded good communication skills and the ability to evaluate activities and prioritize work. Lavergne possessed a ninth-grade education. When asked to read a document by the hearing officer, she demonstrated difficulty doing so. Under the circumstances, we cannot say the hearing officer manifestly erred in finding Lavergne could not "realistically" perform the duties required to satisfactorily fill these positions. Merely showing the "availability of jobs" in the geographical area which pays 90% or more of an injured worker's wage is not sufficient to overcome the burden of proof required by La.R.S. 23:1221(3)(c)(i) if "realistically" the jobs cannot be performed by the worker. Culotta v. Great Atlantic and Pacific Tea Company, 524 So.2d 259 (La.App. 5th Cir.1988), writ denied, 530 So.2d 88 (La.1988).
For the foregoing reasons, the judgment is affirmed. All costs on appeal are assessed to Lake Charles Memorial Hospital.
AFFIRMED.