718 So.2d 460 (1998)
Ricky J. DEROUEN, Claimant-Appellant,
v.
C & D PRODUCTION SPECIALIST, Defendant-Appellee.
No. 98-57.
Court of Appeal of Louisiana, Third Circuit.
June 3, 1998.
*461 Lee Andrew Gallaspy, Lafayette, for Ricky J. Derouen.
Jeffrey John Warrens, Baton Rouge, for C & D Production Specialist.
Before WOODARD, AMY and GREMILLION, JJ.
AMY, Judge.
Claimant appeals from a judgment of the Office of Workers' Compensation disqualifying him from receiving workers' compensation benefits based on violations of La.R.S. 23:1208, which governs misrepresentations concerning benefits. We affirm.

Factual and Procedural Background
Claimant, Ricky Derouen, began working for C & D Production Specialists Co., Inc. in August 1994. Derouen described the work as construction and production work which required heavy lifting. At the time of the work-related accident, Derouen's services had been contracted out by C & D to Environmental Resources in Sulphur, Louisiana, to clean up after an oil spill. While in the course and scope of this employment, claimant reportedly injured his back on February 26, 1996, and again, on February 27, 1996. Following the second work-related accident, Derouen notified his employer and was transported immediately to a physician to receive medical attention. Derouen never returned to work at C & D.
Initially, C & D paid weekly benefits in the amount of $213.33 per week and all medicals to Derouen. However, on October 29, 1996, it discontinued payment of weekly benefits, alleging Derouen had committed workers' compensation fraud and, thereby, forfeited all rights to benefits pursuant to La.R.S. 23:1208. Derouen filed a claim with the Office of Workers' Compensation seeking additional compensation benefits.[1]
*462 Following a hearing on the merits, the workers' compensation judge found that Derouen had forfeited his rights to further compensation benefits by returning to work for an undisclosed employer, and for knowingly making false statements and misrepresentations to David Lorino, a claims representative employed by Louisiana Workers' Compensation Corporation, C & D's workers' compensation carrier, and to the workers' compensation tribunal during the hearing. Derouen appeals, assigning the following errors: (1) the workers' compensation judge erred in denying claimant workers' compensation benefits under the provisions of La. R.S. 23:1208; (2) the workers' compensation judge erred when it incorrectly applied La. R.S. 23:1208, ignoring jurisprudence, in particular Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3 Cir. 5/14/97); 696 So.2d 73, writ denied, 97-1582 (La.10/17/97); 701 So.2d 1330; (3) the workers' compensation judge lacked jurisdiction over the alleged violation of La.R.S. 23:1208; and, (4) the workers' compensation judge "improperly ruled and/or applied and/or interpreted 42 U.S.C. §§ 12101  12213 [Americans with Disabilities Act], particularly the peremptive provisions of that statute."

Merits
We will treat claimant's first three assignments together, as the focal point of his argument is whether the workers' compensation tribunal is a forum of proper jurisdiction over alleged violations of La.R.S. 23:1208. In Cajun Bag and Supply v. Baptiste, 94-1218 (La.App. 3 Cir. 3/1/95); 651 So.2d 943, this court discussed, generally, the subject matter jurisdiction afforded the Office of Workers' Compensation and that remaining with the district courts of this state. In that case, we stated:
Pursuant to Article 5, Section 16 of the Louisiana Constitution, the district courts are vested with original jurisdiction over all civil matters unless the Constitution provides otherwise or the Louisiana Legislature has "provided by law for administrative agency determinations in worker's compensation matters." The Louisiana Legislature has vested worker's compensation hearing officers with "exclusive jurisdiction over all claims or disputes arising out" of the Worker's Compensation Chapter. LSA-R.S. 23:1310.3(E) (emphasis added). LSA-R.S. 23:1310.3 provides that hearing officers have the authority to adjudicate claims for benefits and the controversion of entitlement to benefits; therefore, these matters are clearly "worker's compensation matters" which arise under the act.... We believe LSA-R.S. 23:1310.3 requires that a claim actually "arise out" of the Worker's Compensation Act, rather than merely relate to worker's compensation in general, for hearing officers to enjoy original jurisdiction over it.
Id. at p. 9; 948.
In support of his main contention that the workers' compensation judge did not have the legal power and authority to hear and determine whether he had forfeited benefits pursuant to La.R.S. 23:1208, Derouen cites the Grant case rendered by another panel of this court. In Grant, after deciding the case based on substantive errors made by the workers' compensation judge, that panel, on its own motion, noticed that the lower tribunal lacked "subject matter jurisdiction as it pertains to a claim for forfeiture of benefits as provided for in La.R.S. 23:1208." Grant, 96-1546, p. 5; 696 So.2d at 76. That panel went on to conclude that forfeiture of benefits on account of fraud fell beyond "`benefit and penalties directly associated with the employee's work-related injury and his receipt of workers' compensation benefits....'" Id. at p. 6; 76 (quoting Sampson v. Wendy's Management, Inc., 593 So.2d 336, 339 (La.1992)); but see Jones v. Trendsetter Production Co., Inc., 97-299 (La.App. 3 Cir. 2/25/98); 707 So.2d 1341; Cenla Steel Erectors v. McDonald, 98-15 (La.App. 3 Cir. 1/12/98). We respectfully disagree with the conclusion reached by our esteemed colleagues in Grant. Instead, our opinion is that the statutory language and the relevant jurisprudence support the view that the workers' compensation judge does indeed have subject matter jurisdiction to determine whether a forfeiture of benefits has occurred pursuant to La.R.S. 23:1208.
Section 1208, as it existed at the time of Derouen's alleged false statements and *463 employment by an undisclosed employer,[2] provided:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
....
E. Any employee violating this Section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
(Emphasis added).
The Louisiana Supreme Court, considering the appropriate interpretation and application La.R.S. 23:1208, stated, as follows:
Section 1208 is clear and unambiguous and as such will be applied as written. La.Civ.Code art. 9; La.R.S. 1:4. Section 1208 clearly applies to any willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment." Section 1208 has no language limiting it to only certain types of false statements, i.e., statements other than those relating to prior injuries. The legislature has imposed no notice requirement in Section 1208, apparently being of the opinion that any claimant should be on notice that false statements made willfully for the purpose of obtaining workers' compensation benefits will not be tolerated and will result in the forfeiture of those benefits. The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.
Our conclusion is further buttressed by the legislative history of Sections 1208 and 1208.1. The history of Section 1208 indicates a clear legislative intent to prevent and discourage fraud in relation to workers' compensation claims, and Section 1208 should not be subjected to a strained interpretation which would undercut that legislative intent.... A 1992 amendment to Section 1208 added civil penalties to the criminal penalties and made clear that a hearing officer is to determine whether a claimant violated the section, resulting in the disqualification from receiving benefits. 1992 La. Acts No. 763.
Resweber v. Haroil Const. Co., 97-2708, 94-3138, pp. 7-8 (La.9/5/95); 660 So.2d 7, 12. (Emphasis added).
In sum, we conclude that the workers' compensation judge correctly found that application of La.R.S. 23:1208 was clearly within his jurisdiction. Accordingly, the Office of Workers' Compensation was the appropriate forum to determine whether claimant forfeited benefits on account of misrepresentations or fraud advanced by him to obtain compensation benefits. Next, we proceed to the facts of this case.
The workers' compensation judge, in written reasons for judgment, gave credence to the testimony of Lorino, the claims representative assigned to the claim, and Lawrence Verret, owner of Vesco Rentals & Supply, in finding Derouen had knowingly made misrepresentations in an attempt to obtain/maintain workers' compensation benefits. In so doing, the workers' compensation judge discounted the contrary testimony given by the claimant. Credibility determinations, like those made by the workers' compensation judge in the case sub judice, "are solely within the factfinder's province." Lavergne v. Lake Charles Memorial Hospital, 625 So.2d 1098, 1099 (La.App. 3 Cir.1993), writ denied, 93-2756 (La.1/7/94); 631 So.2d 451. In his written reasons, the workers' compensation judge stated:
When reviewing the conflicting testimony of Mr. Verrett [sic] and claimant and making the determination of whether claimant knowingly gave false testimony, *464 the credibility of both Mr. Verrett [sic] and claimant obviously comes into play. On this issue, numerous documents were admitted into evidence, and claimant admitted he lied on multiple occasions in the past. Medical records admitted into evidence as Defendant Exhibits 1, 2, and 3[] showed claimant had an extensive medical history of low back complaints similar to those made at present. Claimant testified he remained on temporary total disability for a prior alleged low back injury for approximately three and one-half years until he settled his compensation (and tort) claim. Claimant testified at trial that when he sought employment with Steen Production Service subsequent to settling this prior claim, he denied the existence of any back problems or on-the job injuries. Claimant also testified that in the resume he submitted in conjunction with his Steen application, he created a fictitious work history which hid the fact that he was unemployed and on workers' compensation for approximately three and one-half years due to his alleged prior back injury. The record from Steen Production, as well as a copy of the falsified resume, was admitted into evidence as Defendant Exhibit 8.
Claimant's lack of credibility was also evidenced by the application for employment he submitted with defendant and which was admitted into evidence as Defendant Exhibit 12. As with his application for employment with Steen Production, claimant submitted an identical copy of his falsified resume. When claimant completed his Job Placement Medical Questionnaire in conjunction with his examination by Dr. J.L. Comeaux, claimant denied any history of numbness in his hands or feet, severe backaches, back trouble, back injury or back pain on lifting. Claimant also denied to defendant that he had ever had a workers' compensation injury. As with the responses given to Steen Production, claimant testified at trial that all of these responses were false.
Lorino testified that, as the only claims adjuster managing Derouen's claim, it was his job to communicate with Derouen, gather information and determine whether the claim was compensable. Lorino testified that, based on a "hunch," he employed a surveillance team to determine whether Derouen was being truthful concerning his inability to return to gainful employment. The surveillance tapes discovered that, on October 29  30, 1996, Derouen worked at Vesco Rentals and Supply. Lorino further testified that, during the many telephone conversations between he and the claimant, claimant remarked that he was in severe pain and unable to work. Additionally, Lorino testified that Derouen, when asked, denied working at Vesco Rentals and Supply. Lorino stated that he first became aware of Derouen's assertion that although he had worked at Vesco, he was not aware that he had done anything wrong after reading Derouen's deposition taken during discovery.
Verret testified that he was contacted by a woman named Nancy (Derouen's girlfriend at the time) to inquire about a job for Derouen. Verret testified that he was specifically asked to pay Derouen in cash to avoid a record of his employment. When Verret was asked about Derouen's apparent knowledge that working while on workers' compensation was not allowed, the following colloquy took place:
Q.... Did Mr. Derouen talk to you about whether he was or was not on Worker's Comp.?
A. Yes, he was on Workmen's [sic] Comp.
Q. What did he tell you about that?
A. He was very leery about fraud. That's what he was worried about in my shop.
Q. Did he say anything about that.
A. Yes, sir, he did, many a time, because I had to keep my building open, you know, I mean the back part. The door shut down, and it's very, very hot inside the building. And he was painting and buffing,.... But he was scared somebody would be watching him.
Q. Did he say anything to you specifically about being afraid of getting caught working on comp.?
A. Yes, he did.
Q. What did he say?

*465 A. He said he's not worried about the work, you know, he can do the work. He's just worried about the fraud, you know, about being on Workmen's [sic] Comp.; and he mentioned that several times.
Q. So was it your impression that he knew or had the belief that it was inappropriate or ____
A. He knew ____
Q. ____ inappropriate to receive comp. and work at the same time?
A. He knew it was wrong.
Additionally, Verret testified that Derouen contacted him in an effort to encourage Verret to state that Derouen was at Vesco visiting rather than working. Verret testified that he told Derouen that he would "not lie for him."
Derouen, testifying at the hearing, admitted to working at Vesco while receiving benefits. However, he insisted that he was not aware that he was doing anything wrong and that it was Verret who decided that he would be paid in cash. Furthermore, he testified that he informed Lorino that he worked at Vesco sometime in November 1996. During his testimony, Derouen admitted to more than one occasion where he had knowingly provided false information regarding employment matters, including employment history, work-related accidents and previous compensation claims. In a job application to Steen Production, claimant directed attention to his resume, a resume admitted to contain false information. Derouen stated that the reason he provided the false information on his employment application and the attached resume was because "[he] was scared [he] wasn't going to find a job." At the hearing, it was also discovered that Derouen attached this same resume to the application filled out at C & D. During questioning, the following colloquy occurred:
Q. Mr. Derouen, rather than belaboring the Court and pulling your resume out and going through it again, did you make ____
A. Same old resume, same old thing.
Q. Same resume, same ____
A. Same resume.
Q. ____ incorrect information?
A. Same stuff, same documents.
Q. And you knew it was incorrect when you gave it to them?
A. Yes, I did.
During recross examination, counsel for the defense attempted to elicit a response from Derouen illustrating his perception of the difference between lying to obtain a job and lying to receive compensation benefits. The following discourse occurred:
BY MR. WARREN:
Q. You stated that you had lied on your application in order to make money, correct?
A. Go back. I wanted a job.
Q. All right. To earn money?
A. Yes, sir, pay my bills, pay my child support. My child support went up, you know, do what I needed to do.
Q. And obviously, when you receive a comp. check, you get money; is that correct?
A. Yes, sir.
Q. Now, is there a difference that I should know about as to why you would lie to get a job to get money from a payroll check, but you wouldn't lie to get money to get a comp. check?
A. What I told you before and I'll tell you again, okay, the reason why I done it, I was in a bind. I had a lot of bills to pay, and I had four people to feed. I needed some extra money. I did it. I did what I could do, and that was the end of it.
The workers' compensation judge, considering the above testimony and admission of previous dishonesty on the part of the claimant, as well as all the documentary evidence, concluded that Derouen had knowingly made misrepresentations to Lorino and to the workers' compensation tribunal for the expressed purpose of obtaining compensation benefits, thereby, forfeiting all rights to compensation benefits pursuant to La.R.S. 23:1208. We do not find this finding clearly wrong. Accordingly, we conclude that claimant's first three assignments of error are without merit.
Lastly, we address Derouen's contention that the Americans with Disabilities Act, *466 42 U.S.C. § 12101-12213, preempts La.R.S. 23:1208, as it was applied by the workers' compensation judge in this case. First, we note that the decision in this case was based on the testimony of the claims adjuster, Lorino, and the claimant, himself. Further, the lower tribunal expressly found, as follows:
[T]he Americans With Disabilities Act, found in 42 U.S.C.A. § 12101-12213, does not prohibit the Court's consideration of the Medical Questionnaire admitted into evidence at the trial of this matter.
The Americans With Disabilities Act is federal legislation designed to combat discrimination against the disabled in employment. Claimant's counsel is asserting that the medical questionnaire completed by claimant in conjunction with his employment by Steen Production and defendant violated the provisions of ADA. As a result of these alleged violations, it is asserted these documents should not be considered by this Court. However, this Court admitted the documents into evidence and claimant testified concerning his responses on these documents at trial.... This Court does not recall any questions on this issue [requirements of ADA] and is not aware of any jurisprudence or statutory basis which would preclude this Court's consideration of the already admitted evidence for the purposes for which it was admitted into evidence in this case.... [N]othing in Title 23 would call for this Court to disregard evidence even if it was obtained in violation of the ADA. This Court is also unaware of any provision within the ADA which mandates that any medical history obtained in violation of its provisions shall not be considered in any judicial proceeding for any and all purposes.
The documents, which allegedly violate the Americans With Disabilities Act, were offered by the defense and allowed into evidence by the workers' compensation judge for the express purpose of attacking Derouen's credibility. When overruling one of claimant's objections at the hearing, the workers' compensation judge stated: "I believe what is at issue is credibility, and he's delving into that. And for that reason, whenever a witness takes the stand, his credibility is always at issue." We see no error in the workers' compensation judge's actions. Accordingly, Derouen's final contention lacks merit.

DECREE
For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. All costs associated with this appeal are assessed to the claimant, Ricky J. Derouen.
AFFIRMED.
NOTES
[1] C & D continued paying Derouen's medical expenses throughout the time of his alleged inability to return to work.
[2] The appropriate version of the statute is the date of the false statement rather than the date of the accident. See Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95); 660 So.2d 7; Savoy v. Cecil Perry Improvement Co., 96-889 (La. App. 3 Cir. 2/5/97); 691 So.2d 692. The first allegation of misrepresentation for the express purpose of maintaining/obtaining compensation benefits occurred in the days following the termination of Derouen's compensation benefits following LWCC's discovery that Derouen had worked for Vesco Rental & Supply while receiving benefits.